UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

AUI PARTNERS LLC,                                 )
                                                  )
      Plaintiff,                            )
                                                  )
v.                                                )    Civil Action No. 1:23-cv-12292-WGY
                                                  )
STATE ENERGY PARTNER LLC                          )
d/b/a AMPS ELECTRIC, JOHN BIANCHI, and            )    **ORAL ARGUMENT REQUESTED**
FK CONSTRUCTION FUNDING, LLC,                     )
                                                  )
      Defendants.                           )
                                                  )
_____)

## AUI PARTNERS, LLC'S MOTION TO DISMISS COUNTERCLAIM

### (Memorandum of Law Incorporated)

AUI Partners LLC ("AUI") pursuant to Fed. R .Civ. P. 12(b)(6) moves to dismiss FK

Construction Funding LLC's ("FK") Counterclaim.

## INTRODUCTION

AUI, an engineering, procurement and construction contractor, retained State Energy

Partner LLC ("SEP") through a Master Subcontract to perform construction services on at least

four different projects in Massachusetts and Maine for an aggregate value of approximately $6

million. Unbeknownst to AUI, SEP was completely financially dependent upon factor financing

through a commercial lender, FK (under a separate factor financing agreement). After FK

refused to continue to fund SEP, SEP defaulted under the Master Subcontract, and AUI filed this

action seeking to collect its completion costs. In response, FK filed a counterclaim against AUI

seeking to declare the rights of and recover losses sustained by SEP. In particular, FK seeks a

declaration of rights under a "contract" to which it was not a party; to recover SEP's costs either

under a theory of quantum meruit or for fraud (based upon representations made to and damages incurred by SEP), and to collect SEP's damages under Chapter 93A.

FK's claims fail as a matter of law for several reasons. ***First***, FK lacks standing to assert any of the claims against AUI. This is because SEP sustained all of the damages resulting from AUI's alleged false representations, breach of contract and unfair and deceptive acts. Nor can FK avoid this conclusion by claiming it is an assignee of SEP. This is because there are no facts alleged in the counterclaim to support an assignment of any rights. ***Second***, FK has failed to assert direct independent claims against AUI. Specifically, the quantum meruit claim fails because FK conferred no direct benefit on AUI (to the extent there was any benefits these were conferred on SEP); the fraud claim fails because there are no allegations that AUI made any specific direct representations to FK to induce reliance; and the Chapter 93A claim fails because there is no commercial relationship between FK and AUI. As a result, the counterclaims should be dismissed.

## FACTUAL ALLEGATIONS SET FORTH IN THE COUNTERCLAIM

By a Master Subcontract signed on March 30, 2022, AUI, a Texas-based Equipment, Procurement and Construction contractor ("EPC"), and SEP, a Massachusetts-based excavation contractor, agreed to general terms that would be incorporated for every job issued to SEP. (Counterclaim ("Counter.") at ¶ 8). Through the Master Subcontract, AUI issued work orders for to SEP for specific projects in Maine and Massachusetts. (Counter. at ¶¶ 8, 9).

With the executed Master Subcontract, on March 31, 2022, SEP signed a Construction Services and Supply Agreement ("Factoring Agreement"[1]) granting FK the right to purchase and

---

[1]    A "sale of accounts receivable…at a discounted price" is commonly referred to as factoring." <u>In re Metro Environmental, Inc.</u>, 293 BR 893, 895 (Bankr. N.D. Ohio 2003); <u>see also</u> <u>Capital Funding Services Inc. v. Red Oak Corp.</u>, No. 001357BLS 2001 WL 1811962 (Mass.

a security interest in SEP's accounts receivable.[2] (Counter. at ¶¶ 7, 10, 11). In exchange for the discounted purchase of accounts receivable, SEP and its employees assigned[3] "all rights to payment" for the work performed. (Counter. at ¶¶ 4, 5).[4]

With FK providing "liquidity,"[5] SEP successfully completed work on various projects for AUI. (See Counter. ¶¶ 12-15). Specifically, through 2022, SEP completed work, submitted its applications for payment to AUI and based upon SEP's direction, AUI paid FK directly. (Id.).

In late 2022, "frustrated by [AUI's] non-payment," on February 9, 2023, SEP demanded payment and, in response, AUI "agreed to enter a payment schedule four [sic] January through May 2023." (Counter. at ¶ 20). In reliance upon AUI's representations to SEP, FK continued to "fund" the projects.[6] (Counter. at ¶¶ 21-23). Rather than continuing to pay under the alleged

---

Super. Ct. Dec. 27, 2001) (describing the business of factoring as the "purchase of accounts receivable form operating businesses.").

[3]    Nowhere in the Counterclaim does FK identify the terms of the alleged assignment. Instead, FK summarily concludes that the "benefit" of any payment was "***assigned***" to FK. (Counter at ¶¶ 26, 31 ("FP [sic] as ***assignee*** of SEP is owed a principal balance of $5,713,058.07")). See generally In re Computer Engineering Associates, Inc., 337 F.3d 38 46 (1st Cir. 2003) ("To be an effective assignment, the assignor must divest itself of all right, interest and control in the property assigned.").

[4]    The Counterclaim generically describes the business of factoring in paragraphs 4 and 5 (describing a factoring agreement "generally" alleging that it "contemplates the client and its employees assigning in exchange for payment from FK" rights to payment) but fails to link this generic business description with the actual terms of the factoring agreement signed by SEP. Compare Counter at ¶¶ 4-5 with ¶¶ 7, 9, 11.

[5]    Nowhere in the Counterclaim does FK actually allege that it purchased any accounts receivable from SEP. Nor does it identify the particular accounts receivable that were allegedly assigned as a result of its purchase. AUI assumes by alleging that FK provided "liquidity" this means it purchased certain unidentified account receivable. (Counter at ¶ 12).

[6]    FK has alleged that it purchases accounts receivable (and is not a lender). (Counter at ¶ 4) ("FK's business provides liquidity to companies in the construction industry by purchasing accounts receivable."). FK nevertheless alleged that it "funded" projects in reliance upon an alleged representation to SEP of payment. (See Counter. at ¶ 21). Presumably, by the using the word "funded," FK intended to represent that it was continuing to purchase accounts receivable.

payment schedule, AUI issued "pretextual and factually incorrect default notices." (Counter. ¶ 24).

Based upon these facts, FK has asserted a claim for Intentional Misrepresentation, Chapter 93A, Quantum Meruit and Declaratory Judgment (Breach of Contract).

## ARGUMENT

## I.    FK LACKS STANDING TO ASSERT ANY CLAIMS.[7]

FK has failed to allege sufficient facts to establish standing to recover SEP's damages and, therefore, its claims should be dismissed.[8] To establish standing, a plaintiff must establish a "personal stake in the outcome" of the claim asserted. Baker v. Carr, 369 U.S. 186 (1962). Thus, a plaintiff must plead a concrete injury that affected the plaintiff in a personal and individual way; that the injury was caused by the defendant's challenged conduct; and that a favorable result is likely to redress the asserted injury. Id. at 561; see also Van Wagner Boston LLC v. Davey, 770 F.3d 33, 37 (1st Cir 2014); Mitnor Corporation v. Lana, No. 18-P-1011, 96 Mass.

---

[7]    Even if FK had alleged sufficient facts to establish standing to request declaratory relief under a contract to which it is not a party, the Court should exercise its discretion and decline to grant the requested declaration. Transpac Marine LLC v. Yachtinsure Services, Inc., 655 F.Supp.3d 18, 29 (D. Mass. 2023) (federal district court has "complete discretion" to issue a declaratory judgment). Specifically, the requested declaratory relief is not forward looking to avoid a potential dispute but retrospective and, therefore, is factually and legally indistinguishable from a claim for breach of contract. See Rausnitz v. Transamerica Life Insurance Co., Civil No. 19-228948 at *2 (S.D. Fla. Dec. 13, 2019) (confirming that for a request for declaratory relief for breach of contract "must be forward looking rather than retrospective as any retrospective declaration would be equally resolved by resolution of the breach of contract claim."); Kenneth F Hackett & Associates, Inc. v. GE Capital Info Tech Solutions, Inc., 744 F.Supp.2d 1305, 1311 (S.D. Fla 2010) (declaratory judgment claim potentially affecting future payments sought different relief than the breach of contract claims).

[8]    FK bears the burden of pleading facts necessary to demonstrate standing. Hochendoner v Genzyme Corp., 823 F.3d 724, 730-731 (1st Cir. 2016) ("we make explicit today what our cases have implied and what the near-uniform precedent in other circuits has established: at the pleading stage, the plaintiff bears the burden of establishing sufficient factual matter to plausibly demonstrate his standing to bring an action. Neither conclusory assertions nor unfounded speculation can supply the necessary heft.").

App. Ct. 1102, 2019 WL 4620269, *2 (Mass. App. Ct. Sept 18, 2019) (a "nonparty to the contract generally lacks standing to assert rights under the contract."); Sullivan v. Kondaur Capital Corp., 85 Mass. App. Ct. 202, 205 (2014) (a "nonparty who does not benefit from the contract generally is without standing to enforce rights under it.").

Here, FK has failed to identify any concrete injury suffered from the alleged conduct of AUI. Nowhere in the counterclaim are there any allegations to support any contractual or business relationship between FK and AUI. Nor are there alleged communications between FK and AUI. Rather, the counterclaim confirms that FK through the Factor Agreement purchased accounts receivable from SEP and ***assume the risk of collection***. (Counter at ¶¶ 4, 7 10) ("FK assumes the risk of non-payment on the purchased assets."). Thus, to the extent FK has incurred any damage or sustained any injury it was not caused by AUI but rather SEP and the appropriate redress is through the Factor Agreement.

Nor can FK establish standing by virtue of an alleged purchase and assignment of unidentified accounts receivable. (See Counter at ¶¶ 5, 11). This is because FK (even under the most liberal pleading requirements) has failed to allege any facts to establish any rights under an assignment or, more specifically, any rights to collect particular receivables.[9] Nowhere in the counterclaim has FK disclosed the terms of any assignment or identified any specific rights to a specific contract that were actually assigned to FK. See 14 Mass. Prac., Basic Summary Law § 5:99 (2023) (An assignment of a contract right is a manifestation by the assignor of his intention to transfer the right to another person so that the obligor's performance is no longer due

---

[9]    AUI recognizes that the "Rules 'do not require a claim to set out in detailed the facts upon which he bases his claims." Raytheon Co v Continental Casualty Co., 123 F.Supp2d. 22, 27 (D. Mass. 2000)  But it nevertheless is required to allege material elements necessary to sustain recovery, which FK has failed to do.  Id.

to the oblige assignor but becomes due to the assignee). Rather, the allegations in the Counterclaim are broad based, non-specific and conclusory. FK omits any reference to the particular Factor Agreement with SEP and, instead, provides generic detail of factoring agreements "generally" describing the "contemplate[ed]" process of FK's early purchase of unidentified receivables in exchange for an assignment from "clients and employees." (Counter. at ¶ 5). Without any details of the assignment or the specific rights assigned, FK cannot establish an injury in fact (i.e., a right to collect the accounts receivable). See In re Computer Engineering Associates, Inc., 337 F.3d 38, 46 (1st Cir. 2003) ("To be an effective assignment the assignor must divest itself of all right, interest and  control in the property assigned."); Haven Real Estate Group LLC v. Bell Atlantic Mobile of Massachusetts, 236 F.Supp.3d 454, 463 (D Mass 2017) ("If one of the parties to a contract assigns his contractual rights and obligations to a third party that individual may enforce the contract.").

## II.  FK HAS NOT ALLEGED SUFFICIENT FACTS TO ESTABLISH DIRECT CLAIMS AGAINST AUI  FOR QUANTUM MERUIT, FRAUD OF VIOLATION OF CHAPTER 93A.

### A.    FK Did Not Confer a Benefit on AUI and, Therefore, its Quantum Meruit Claim Fails.

FK conferred no benefit upon AUI and, as a result, the quantum meruit claim fails as a matter of law. Quantum meruit is a theory of recovery of damages (and not an independent claim) based upon principles of fairness intended to prevent unjust enrichment at the expense of another. See JA Sullivan Corp. v. Com., 397 Mass. 789, 793-794 (1986); see also Mass Cash Register Inc. v. Comtrex Systems Corp., 901 F.Supp. 404 (D. Mass. 1995) ("A person who has been unjustly enriched at the expense of another is required to make restitution to the other.").

> In order to recover on a theory of quantum meruit, the plaintiff must provide . . .(1) that [he] conferred a measurable benefit upon the defendant[]; that the claimant reasonably expected compensation from the defendant[]; and (3) that the defendant[] accepted the benefit with the knowledge . . . of the claimant's reasonable expectation.

Broderick v. Lynch, 87 Mass. App. Ct. 1137 (2015); see also Salamon v Terra, 394 Mass. 857, 861 (1985) (Quantum meruit is applicable where: "services are rendered by one party and voluntarily accepted by another, the presumption that there is an expectation of payment therefor as well as an implied promise of payment for the reasonable worth of those services may be rebutted by showing of a strong self-interest in the outcome of the transaction by the party furnishing those services.").[10]

Here, FK has not alleged that it conferred any benefit on AUI. Instead, the allegations support that FK's discounted payments to purchase accounts receivable benefited FK's "client," SEP. (Counter at ¶ 4). In particular, FK alleged that it provides "liquidity" by purchasing SEP's accounts receivable, providing SEP "immediate access to funds." (Id.).

Moreover, any alleged benefit to AUI was conferred by *SEP* (not FK) through *SEP's work* under the Master Subcontract. See Counter. at ¶ 29. Specifically, FK has alleged that:

- "AUI entered into…the Master Subcontract" with SEP (Counter. at ¶ 8);

- "AUI provided SEP work orders to perform work at various locations in Maine and Massachusetts (Counter. at ¶ 9);

---

[10]     To recover in quantum meruit in a construction case, a contractor must establish both substantial performance of the contract and a good faith effort to complete the contract work. G4S Technology LLC v. Massachusetts Technology Park Corporation, 479 Mass. 721, 740, 741 (2018). The amount of recovery in a claim based upon quantum meruit is the fair and reasonable value of material and labor supplied to the benefiting party. See Bolen v. Paragon Plastics, Inc., 747 F.Supp. 103, 106-07 (D. Mass. 1990); JA Sullivan, supra at 379.

- "SEP's role…was to perform the construction work…" (Counter. at ¶ 10); and

- "SEP substantially completed in good faith its contract work" (Counter. at ¶30).

Thus, as alleged, SEP conferred a benefit upon AUI (*not FK*), SEP did so with the reasonable expectation that it would be paid by AUI, and that a reasonable defendant in AUI's position would have expected to SEP (*not FK*). See Blacksmith Investments LLC v. Cives Steel Company, No. 05-11567, 2006 WL 6499323 (D. Mass. Sept. 7, 2006) (dismissing a similar claim of quantum meruit by a lender claiming rights by virtue of an assignment of receivables due under a construction contract where any benefit was conferred by the contractor, not the lender).

### B.    FK has Failed to Allege any Specific Independent Claim of Fraud.

FK has failed to allege fraud with particularity. Even if it did, FK has neither alleged a specific representation intended to induce reliance, there is no allegation that AUI made any representation to FK or that the representation was intended to induce FK to make payment. As a result, FK's claim of fraud fails. By definition misrepresentation requires a false representation of material fact with knowledge of its falsity *for the purpose of inducing the plaintiffs to act on this representation*. Masingill v EMC Corp., 449 Mass. 532, 540 (2007) (to recover for fraud, a plaintiff "must allege and prove that the defendant made a false representation of material fact; see also Danca v. Taunton Savings Bank, 385 Mass. 1, 8 (1982); see also John Beaudette Inc. v. Sentry Insurance, 94 F.Supp.2d 77, 128 (D. Mass. 1999) (granting summary judgment for failure to establish intent to induce the plaintiff to act). Thus, "to be liable for fraud, a defendant must have made a representation *to the plaintiff*." Wahlstrom v. Hoey, No. 22-CV-10792-RGS, 2023 WL 6610578, at *8 (D. Mass. Oct. 10, 2023); see also Pitman v. Lynn Gas & Elec. Co., 241

Mass. 322, 324 (1922) (defendant could not recover for deceive where "it made no representations of any kind to the plaintiff").

Moreover, a claim for fraud must be plead with particularity to provide adequate notice to defendants and allow them to prepare meaningful responses, and to preclude a groundless fraud claim as a pretext to use discovery as a fishing expedition and to safeguard defendants from frivolous charges that might damage their reputations. 4 MVR LLC v. Warren W Hill Construction Co., 12-10674 2013 WL 310290 at*4 (D. Mass. Jan. 25, 2013). As a result, claims for fraud must include the "underlying misrepresentation, who made it, and when and where it was made." Robinson v. Spencer Stuart Inc., No 13-10278 RWZ, 2013 WL 3989672 at *9 (D. Mass. Aug. 5, 2013).

Here, FK failed to allege any specific representation of AUI to induce it to act. Rather, FK's misrepresentation claim relies solely and exclusively *upon a representation made to SEP*. In particular, the allegations in the Counterclaim confirm that FK was not involved in the performance of the contract and did not participate in any conversations on which the misrepresentation claims is based. See Blacksmith Investments LLC v. Cives Steel Co., Inc., 228 F.R.D. 66, 72, 73 (D. Mass. 2005) (dismissing a claim of fraud asserted by a lender based upon representations of payment to a subcontractor). Instead, FK claims reliance upon "AUI's agreement" with SEP "to pay for outstanding requisitions and enter into a payment schedule." (Counter. at ¶ 37). But the statement was not made to FK. See id.; Wahlstrom, 2023 WL 6610578, at *9 (dismissing fraud claim where there was no allegation that the defendants "ever actually made any misrepresentations to [plaintiff] at all"); Gorbey ex rel. Maddox v. Am. J. of Obstetrics & Gynecology, 849 F. Supp. 2d 162, 166 (D. Mass. 2012) ("Plaintiffs here do not allege that they relied or acted upon any alleged misrepresentation but rather that third parties so

relied and acted which, in turn, resulted in plaintiffs' injury. Plaintiffs point to no case, however, and the Court has found none, in support of a theory that third-party reliance on fraud is cognizable under Massachusetts law"), aff'd sub nom. A.G. ex rel. Maddox v. v. Elsevier, Inc., 732 F.3d 77 (1st Cir. 2013). Nor are there any allegations in the Counterclaim to identify who communicated the alleged false statement to FK, and when it was communicated.  Without any facts to support a claim that AUI made a misrepresentation to FK to act the claim of fraud fails as a matter of law.

Moreover, even if FK has alleged sufficient facts to support its claim, future statements of performance are not actionable under a claim of fraud. Under Massachusetts law only statements of a factual nature that are false when made give rise to a cause of action for fraud.  Cummings v. HPG Int'l Inc., 244 F3d 16, 21 (1st Cir. 2001).  Statements of a promissory nature (and predication regarding future events are not "false when made" unless it can be shown that the maker never intended to carry out the promise (that is, misrepresented his intent at the time the promise was made), or knew that the predications were false or that the promise was impossible to perform.  Cohn v. State Street Bank and Trust Co., 72 Mass. App. Ct. 627, 631 (2008) (investment advisor's predication that "long term results should be fine" not actionable).

Here, the alleged promise was prospective with no specific allegations confirming that AUI (at the time it made the promise) did not intend to provide the payment plan. As a result, the statements are not actionable and the claim should be dismissed.

**C.    The Chapter 93A Claim Fails Because There is no Commercial Relationship.**

FK has failed to allege a commercial relationship with AUI and, therefore, its claim under Chapter 93A fails as a matter of law. To assert a claim under 93A a plaintiff must be ***engaged in trade or commerce*** and suffer a loss of money or property as a result of the ***use or employment***

*of unfair of competition or deceptive act* or practice by another engaged in trade or commerce.

M.G.L. c. 93A, § 11. This requires that either a competitive relationship or that both the plaintiff

and defendant be engaged in a commercial transaction in trade or commerce with *each other*.

See Cash Energy Inc v. Weiner, 768 F.Supp. 892, 894 (D. Mass. 1991) ("Two different kinds of

'business relationship are apparent."  First, the statutory phrase 'unfair method of competition'

suggests a competitive relationship; the complaint does not allege that such a relationship exists.

Second the statutory phrase 'unfair or deceptive act' suggestions a relationship as parties to a

transaction."); Milliken & Co. v. Duro Textiles LLC, 451 Mass. 547, 563 (2008) (Chapter 93A, §

11 requires a "commercial transaction between a person engaged in trade or commerce and

another engaged in trade or commerce such that they were acting in a "business context");

Spencer v Doyle, 50 Mass. App. Ct. 6, 12 (2000) ("In order for a c. 93A claim to remain viable

however there must exist some "commercial relationship" between the parties…"). While strict

contractual privity is not a required, to establish a commercial relationship under Chapter 93A,

some business, commercial or transactional relationship is required. Mitzan v. Mediview

Services, Inc., No. 98-01211, 1999 WL 33105613 (Mass. Super. Ct. June 16, 1999) ("It is well

established that the parties need not be in contractual privity in order for the actions to come

within the ambit of 93A so long as the parties are engaged in more than a minor or insignificant

business relationship."); see also Steinmetz v. Coyle & Caron, Inc., 862 F.3d 128, 141 (D. Mass.

2017) (dismissing Chapter 93A claim where there was "no relationship between the plaintiffs

and defendants at all prior to the accident at issue).[11] Without the requirement of a commercial

---

[11]     See also Standard Register Co v. Bolton-Emerson Inc., 38 Mass. App. Ct. 545, 551
(1995) (the relationship must consist of something "more than a minor or insignificant business
relationship."); Nei v. Boston Survey Consultants, Inc., 388 Mass. 320, 323-324 (1983)
("although we recognize that there is no requirement of privity of contract, it is somewhat
significant that [the defendant] had no contractual or business relationship with the [plaintiff]");

relationship between the plaintiff and defendant, courts "would run the danger of converting any tort claim against a business into a Chapter 93A claim because all torts encompass acts or practices that could arguably be considered unfair." LB Corp. v. Schweitzer Mauduit International Inc., 121 F.Supp.2d 147, 152 (D. Mass. 2000).

Here, FK has failed to allege any contractual, business or commercial relationship between FK and AUI. Nor is there any alleged transaction between FK and AUI. Rather, FK's Chapter 93A claim is based on a commercial transaction between AUI and SEP, i.e., a Master Subcontract under which AUI retained **SEP** to provide services on a series of projects. AUI relied upon SEP alone to complete the work under the Master Subcontract and to the extent there was any representations of payment, these were made to SEP (and not FK). (Counter. at ¶ 20) (AUI "agreed to enter into a payment schedule" with SEP).

Even if FK alleged a commercial transaction with AUI, the claims are derivative of the other claims and is likewise meritless. See Galvin v. U.S. Bank Nat'l Ass'n, No. CV 14-14723-RGS, 2015 WL 8664207, at *2 (D. Mass. Dec. 11, 2015) (granting summary judgment on Chapter 93A claim because it was derivative of meritless trespass claim) (overruled in part on other grounds by Galvin v. U.S. Bank, N.A., 852 F.3d 146 (1st Cir. 2017)); Pimental v. Wachovia Mortg. Corp., 411 F. Supp. 3d 32, 40 (D. Mass. 2006) ("Since [plaintiff] has failed to allege sustainable breach of contract or negligence claims, and the Chapter 93A claim is based upon the previous two claims, there is no basis for finding [defendant] liable under Chapter 93A."). As a result, the Chapter 93A claim fails as a matter of law.

---

see also Szalla v. Locke, 421 Mass. 448, 451 (1995) ("we conclude that c 93A request that there be a commercial transaction between a person engaged in trade or commerce with another person engaged in trade or commerce.")

## CONCLUSION

For the reasons set forth above, AUI requests that the Court dismiss the Counterclaims with prejudice.

Plaintiff
AUI PARTNERS LLC
.
By its attorneys,

*/s/ Richard E. Briansky*
Richard E. Briansky (BBO# 632709)
Amy B. Hackett (BBO# 676345)
PECKAR & ABRAMSON PC
28 State Street
18TH Floor
Boston, MA  02109
Tel: (617) 342-6824
Fax: (617) 342-6899
Email: rbriansky@pecklaw.com
        ahackett@pecklaw.com

Dated: February 27, 2024

## CERTIFICATE OF SERVICE

I, Richard Briansky hereby certify that a copy of this Motion to Dismiss was electronically served upon the Defendants in this case on February 27, 2024.

*/s/ Richard E. Briansky*
Richard E. Briansky (BBO# 632709)