UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                                )
AUI PARTNERS LLC,               )
                                )
               Plaintiff,       )
                                )
        v.                      )         CIVIL ACTION
                                )         NO. 23-12292-WGY
STATE ENERGY PARTNERS LLC,      )
FK CONSTRUCTION FUNDING, LLC,   )
                                )
               Defendants.      )
_____)
                                )
FK CONSTRUCTION FUNDING, LLC,   )
                                )
               Counter Claimant, )
        v.                      )
                                )
AUI PARTNERS LLC,               )
                                )
               Counter Defendant.)
_____)
```

YOUNG, D.J.                                July 11, 2024

**MEMORANDUM OF DECISION**

**I. INTRODUCTION**

The Plaintiff AUI Partners LLC ("AUI"), a general

contractor, here sues the Defendants State Energy Partners LLC

("SEP"), a subcontractor, and FK Construction Funding, LLC

("FK") (collectively, the "Defendants").  FK is a factoring

company with control over SEP's finances and operations who

bought SEP's accounts receivable for a discounted payment.

Compl. ¶¶ 1, 8, ECF No. 1.  This civil action alleges six counts

as follows: declaratory judgment/contract (against both SEP and

FK) (Count I),[1] declaratory judgment/liens (against both SEP and

FK) (Count II),[2] breach of contract (only against SEP) (Count

III), negligent/intentional misrepresentation (only against FK)

(Count IV), instrumentality/joint venture (against both SEP and

FK) (Count V), and violation of the Massachusetts unfair or

deceptive act or practice law (against both SEP and FK) (Count

VI) ("93A claim").  Id. ¶¶ 39-62.

    AUI's claims stem from the following core allegations.  AUI

hired SEP to complete certain projects in Massachusetts and

Maine, and AUI and SEP signed a Master Subcontract and various

work orders.  Id. ¶¶ 1, 18, 22.  FK induced AUI to pay FK

directly (instead of SEP) through misrepresentations that FK was

SEP's fund manager and that all of AUI's payments were going

directly to the SEP's work projects for AUI.  Id. ¶¶ 25-26.  FK

---

[1] AUI seeks declaratory judgments regarding the parties'
contractual obligations and rights under the subcontract/work
orders, specifically: that SEP breached the work orders, SEP is
obligated to indemnify AUI and defend it against liens, AUI does
not owe money to SEP, any transfer of SEP's rights (presumably
to FK) was void and ineffective, AUI had the right to withhold
payments, and FK/SEP are jointly and severally liable for AUI's
expenses and costs.  Compl. ¶¶ 39-41, ECF No. 1.

[2] AUI also seeks declaratory judgments related to the liens:
alleging that FK does not have standing to assert liens on any
projects, that FK/SEP's liens are invalid because AUI does not
owe FK/SEP money, and that FK/SEP "intentionally inflated their
liens in bad faith."  Id. ¶¶ 42-44.

then wrongfully diverted AUI's payments to unrelated projects. Id. ¶ 27.  SEP consequently had insufficient funds to complete the work and failed to pay various vendors, employees, and suppliers working on AUI's projects, resulting in over $3M in liens and fifteen lawsuits filed against AUI related to these projects.  Id. ¶¶ 27-33, 35, 38.

In their motion to dismiss briefing, the Defendants urged this Court to abstain from exercising its diversity jurisdiction over this case.  The Defendants state that this Court must abstain because AUI's claims "affect numerous in rem state court actions relating to parcels of real property encumbered by state-authorized mechanic's liens."  FK's Mot. Dismiss Pl.'s Compl. & Strike ("FK's Mot.") 1, ECF No. 13; see also SEP's Mot. Partial Dismissal ("SEP's Mot.") 1, ECF No. 16 (adopting FK's motion to dismiss as it relates to SEP).  In making these arguments, the Defendants invoked (both directly and indirectly) the following abstention doctrines: Princess Lida abstention, FK's Mem. Supp. Mot. Dismiss Pl.'s Compl. ("FK's Mem.") 6, ECF No. 14; Colorado River[3] abstention; Younger abstention, FK's Reply 3-5, ECF No. 23; and Brillhart-Wilton abstention.[4]

---

[3] SEP discussed Colorado River as an affirmative defense in its answer.  SEP's Answer 9, ECF No. 11.  FK implicitly raised Colorado River in making its Princess Lida abstention arguments, as discussed infra Section II.D.1.

[4] While raising other abstention doctrines in their briefing, Defense counsel first raised the Brillhart-Wilton

Given the strong presumption in favor of exercising jurisdiction, this Court **DENIED** the Defendants' abstention arguments under <u>Colorado River</u> (and, relatedly, <u>Princess Lida</u>), <u>Younger</u>, and <u>Brillhart-Wilton</u>.  Accordingly, this Court **RETAINED** its jurisdiction over all of the claims brought by AUI in this case.

### A.   Procedural History

AUI filed its complaint in this action against FK and SEP on October 5, 2023.  Compl.  On November 3, 2023, FK filed its motion to dismiss.  FK's Mot.  SEP filed its answer on October 31, 2023, SEP's Answer, ECF No. 11, and its partial motion to dismiss on November 7, 2023, SEP's Mot.  The parties have briefed most of the issues.  FK's Mem.; AUI's Opp'n FK's Mot. Dismiss & Strike ("Opp'n"), ECF No. 19; AUI's Opp'n SEP's Mot. Partial Dismissal, ECF No. 21.

On November 19, 2023, FK also filed a motion for leave to file a reply brief "to respond to matters that could not reasonably be anticipated" in AUI's Opposition Brief –– namely AUI's alleged misrepresentations to the Court about whether

---

doctrine at the hearing.  Neither party provided the Court any additional briefing on this abstention doctrine.  In addition to the Defendants' abstention arguments, the Defendants also moved to dismiss the complaint for non-abstention reasons for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). FK's Mot.; FK's Mem. Supp. Mot. Dismiss Pl.'s Compl. ("FK's Mem."), ECF No. 14; SEP's Mot.  This Court heard, and denied, all of the Defendants' motion to dismiss arguments.

there are parallel litigations to the current proceeding.  FK's
Mot. Leave File Reply Br. AUI's Opp'n Mot. Dismiss &
Alternatively Strike ("FK's Mot. Leave"), ECF No. 20.  This
Court granted the motion to file a reply on November 28, 2023.
Electronic Order, ECF No. 22.  FK filed its reply and attached
AUI's third-party complaint against FK in a state litigation in
Middlesex County ("Middlesex State Action") on November 29,
2023.  FK's Reply, ECF No. 23; id., Ex. 1 ("Third-Party
Complaint"), ECF No. 23-1.  In this reply, FK for the first time
argued that this Court must abstain from exercising jurisdiction
under Younger abstention.  FK's Reply.

On January 10, 2024, this Court heard oral arguments on the
Defendants' motions.  Electronic Clerk's Notes, ECF No. 27.
During this hearing, the Defendants raised the Brillhart-Wilton
abstention doctrine for the first time.  After reviewing the
parties' briefing and hearing oral argument, this Court **DENIED**
all of the Defendants' motions to dismiss arguments.

The Court now publishes this opinion, further explaining
its decision as to the Defendants' abstention arguments.

### B.  Facts Alleged

AUI, a general contractor, retained SEP as a subcontractor
in 2022 for several construction projects in Massachusetts and
Maine.  Compl. ¶¶ 1, 17, 22.

Without AUI's knowledge, SEP gave FK complete control and management of its accounts receivable.  Id. ¶ 1.  SEP then became completely financially dependent on FK.  Id.  Purporting to be SEP's fund manager, FK then induced AUI to pay FK directly (instead of AUI paying SEP) by representing that all of AUI's payments would be going directly to SEP's projects with AUI. Id. ¶¶ 1, 25.  Instead, FK diverted the funds to unrelated projects, and SEP became financially unable to complete the work.  Id. ¶ 27; see also id. ¶ 4 (alleging that "SEP was under-capitalized, had insufficient assets to operate and intended to allow FK to continue to collect money to pay off its existing debts").

FK and SEP failed to pay SEP's employees, suppliers, and vendors for AUI-SEP projects.  Id. ¶ 1.  As a result of SEP's defaults, its unpaid suppliers, vendors, and employees filed over $3,000,000 in liens and over fifteen lawsuits against AUI, with SEP failing to complete almost $4,000,000 of work.  Id.

**1.  History Between the Parties**

FK engages in "factoring," "which is a type of financing designed to allow struggling companies to sell a portion or all of their outstanding invoices (or accounts receivable) to a third party factoring company in exchange for a discounted immediate payment."  Id. ¶ 7.

AUI alleges that FK's owner and operator -- Frank Skelly -- markets his factoring services to "struggling (and unsuspecting) subcontractors[.]" Id. ¶ 8.  It further alleges that one of these struggling subcontractors was Amps, which was formed by John Bianchi, the current owner of SEP, in 2016.  Id. ¶¶ 8-9.  Amps is SEP's alleged predecessor-in-interest.  Id.  Amps struggled financially, signed a factoring agreement with FK in 2020, and transferred control of its business to FK.  Id. ¶¶ 10-14.  Under FK's control and after FK allegedly advanced Amps money, Amps defaulted on its employees, vendors, and suppliers.  Id. ¶¶ 10-15.  Bianchi, Amps' founder, with "knowledge and consent of FK," created SEP to avoid paying Amps' debts.  Id. ¶¶ 9, 16.

In March 2022, Bianchi submitted bids through Amps to AUI for work on several projects.  Id. ¶ 17.  AUI accepted the bids. Id.  With FK's approval and knowledge, Bianchi substituted his new company, SEP, for Amps.  Id. ¶ 18.  Both SEP and AUI signed the subcontract for SEP's work on various projects.  Id.

### 2.  Master Subcontract

SEP and AUI entered into a 2021 General Provisions of Subcontract ("Master Subcontract") in 2022.  Id. ¶¶ 17-18; Compl., Ex. A, 2021 General Provisions Subcontract Agreement ("Agreement"), ECF No. 1-2.

The Master Subcontract has provisions preventing SEP from
"assign[ing] or transfer[ing] this Subcontract . . . including .
. . the right to the proceeds therefrom without express written
consent from [AUI]." Agreement, art. 2.9.  It also states that
SEP "agrees to indemnify, defend, and hold harmless [AUI] from
any claim or cause of action of any assignee related to this
Subcontract." Id.  The Master Subcontract further contains
several other provisions, including the following: requiring SEP
to complete the work "promptly, efficiently and at a speed that
will not cause delay[;]" requiring SEP provide "sufficient
forces to complete the Work in accordance with the Project
Schedule[;]" providing AUI "the absolute right" to withhold due
payments to protect AUI or the project owner from losses;
requiring that SEP "indemnify, defend and hold harmless
indemnified parties from and against any claim, damage, loss or
expense arising out of or relating to any and all liens or bond
claims or claims of right to enforce such liens or bond
claims[;]" and allowing AUI to "retain the entire subcontract
balance until the completion of the project." Id., arts. 1.3.1,
2.6.1, 6.1.3.1, 7.2.2, 7.3.

### 3.   FK's Control Over SEP

AUI had work orders with SEP, and FK approved these orders.
Compl. ¶¶ 22-23.  SEP provided materials and laborers for the
work, invoiced AUI for these expenses, and "directed that all

[8]

payments be issued directly to FK." Id. ¶ 24.  As alleged by
AUI, FK asserted "actual, participatory dominion and control"
over both Amps and SEP by "managing and directing [its] business
operations," "controlling [SEP's] funds and managing [SEP's]
revenue for its own purposes," "directing all of SEP's revenue,"
including payments to "[SEP's] creditors, suppliers, laborers
and vendors," communicating with others (like AUI) to "induce
payment to SEP," and negotiating with contractors, vendors, and
suppliers.  Id. ¶ 56.

### 4.    Fraudulent Representations

To induce AUI to pay FK directly for SEP's invoices, FK
represented to AUI that it was SEP's fund manager, and that all
project funds received from AUI would go directly to the
associated project.  Id. ¶ 25.  Relying on FK's
misrepresentations and at SEP's direction, AUI was induced to
direct payments to FK.  Id. ¶ 26.  FK knew that those
misrepresentations were false when made and did not use the
funds as represented.  Id. ¶ 52.  Instead, FK "diverted [the
funds] for other expenses (on unrelated projects) or for other
purposes."  Id. ¶ 27.  Consequently, SEP's project costs
remained unpaid, SEP did not have sufficient labor to complete
its work, and "SEP's progress to complete the work was delayed."
Id.

### 5.   Consequences of SEP's Failure to Complete Work

By January 2023, "SEP was struggling to prosecute the work," and submitted inflated invoices to AUI.  Id. ¶ 28.  In response to these issues, AUI sent notices asking SEP to cure these defects.  Id. ¶ 29.  SEP refused to remedy the defects and instead claimed that outstanding orders to modify the work prevented SEP from completing the projects.  Id.

Several of SEP's unpaid employees, vendors, and suppliers filed liens on the projects.  Id. ¶ 31.  SEP did not discharge or pay off these lien claims.  Id. ¶ 33.  FK and SEP also filed six of their own liens against AUI in Maine and Massachusetts state courts.  Id. ¶¶ 33, 38.  AUI alleges that Defendants' liens were "inflated . . . to leverage AUI to pay money that was not owed."  Id. ¶ 36.  The liens filed by FK and SEP include:

- An action filed by FK captioned FK Construction Funding LLC as assignee of Workers Employed by SEP v. AUI Partners and United States Fire and Insurance Company, pending in Plymouth County Superior Court, Civil Action No. 2383 cv 00418;
- An action filed by FK captioned FK Construction Funding LLC as assignee of Workers employed by SEP v. AUI and United States Fire Insurance Company, Civil Action No. 2353 cv 000330[,] pending in Middlesex District Court;
- An action filed by SEP captioned State Energy Partner LLC v. AUI Partners LLC and United Fire Insurance Company, Civil Action No. 2383 cv 00580[,] pending in Plymouth County Superior Court.
- An action filed by FK captioned FK Construction Funding LLC as assignee of Workers employed by State Energy Partners v. AUI Partners LLC, Enfield Hammett Road Solar LLC and Vambutas Land Co., LLC, Docket

No. 2023-00019[,] pending in Penobscot County
Superior Court, Maine;

- An action filed by FK captioned <u>FK Funding LLC as
assignee of Workers employed by State Energy
Partners LLC</u> v. <u>AUI Partners LLC, Exeter Mills Road
Solar, and James Crane and Steven Crane</u>, Docket No.
2023-00020[,] pending in Penobscot County Superior
Court, Maine;

- An action filed by FK captioned <u>FK Construction
Funding LLC as assignee of Workers employed by State
Energy Partner LLC</u> v. <u>AUI Partners LLC, Walden Solar
NE LLC, Nautilus Solar Energy LLC, and City of
Sanford</u>, Docket No. 2023-00044[,] pending in York
County Superior Court, Maine.

<u>Id.</u> ¶ 38.

In sum, as alleged by AUI, SEP's failures "forced [AUI] to
issue more than $4.2 million in bonds and defend these various
liens in approximately fifteen (15) separate lawsuits pending in
Maine and Massachusetts."  <u>Id.</u> ¶ 35.


## II.  ANALYSIS

### A.  Pleading Standard

The First Circuit has not clearly resolved whether to apply
Rule 12(b)(1) or Rule 12(b)(6)[5] in deciding whether to abstain
from exercising jurisdiction.  <u>Massachusetts Delivery Ass'n</u> v.
<u>Coakley</u>, 671 F.3d 33, 40 n.6 (1st Cir. 2012) (noting that there
is a dispute as to which standard to use when evaluating <u>Younger</u>
abstention among district courts in the First Circuit); <u>Tran</u> v.

_____

[5] FK moves for dismissal under Rule 12(b)(6) in its papers.
FK's Mot. 1; FK's Mem. 3-4.

Healey, No. CV 22-40086-LTS, 2022 WL 12480458, at *1-2 (D. Mass. Sept. 13, 2022) (Sorokin, J.), appeal dismissed sub nom. Tran v. Campbell, No. 22-1774, 2023 WL 7152041 (1st Cir. May 8, 2023) (noting that the First Circuit has not decided this question with respect to Younger abstention); see also Marshall v. Bristol Superior Ct., 753 F.3d 10, 17 (1st Cir. 2014) (noting that Younger is "not a jurisdictional bar" but is instead a "prudential limitation" on the court's exercise of properly-held jurisdiction).

As such, district courts, within the First Circuit, have disputed whether to apply 12(b)(1) or 12(b)(6) to abstention claims.[6]  "A primary difference between the two [standards] is

---

[6] Tran, 2022 WL 12480458, at *1-2 (noting that this is unresolved but applying Rule 12(b)(6) because the plaintiff invoked Rule 12(b)(6) and it is more favorable to the plaintiff); Jafri v. New Hampshire Supreme Ct. Comm. on Character & Fitness, No. 1:22-CV-0039-JL, 2022 WL 10600019, at *1 n.1 (D.N.H. Oct. 18, 2022), aff'd, No. 22-1802, 2023 WL 7294994 (1st Cir. Oct. 23, 2023) (acknowledging that the First Circuit has not resolved which standard to apply for Younger abstention but opting to assess these arguments under Rule 12(b)(1)); Ironshore Indem. Inc. v. Villa Marina Yacht Harbor Inc., No. CV 23-1370 (FAB), 2023 WL 6815125, at *4 (D.P.R. Oct. 17, 2023) ("Brillhart abstention does not raise Rule 12(b)(1) jurisdictional defects or a Rule 12(b)(6) challenge to the facial sufficiency of the complaint."); Rivera-Delgado v. Chardon, 932 F. Supp. 2d 282, 283 n.2 (D.P.R. 2013) (stating that Younger abstention is not a subject matter jurisdiction argument); Burckhart Search Grp., Inc. v. Doral Fin. Corp., No. CIV. 11-1565 JAF, 2011 WL 6029817, at *3 n.5 (D.P.R. Nov. 30, 2011) (stating that there is disagreement among the circuit as to whether Younger is a jurisdictional question but noting that Justice Scalia has stated that the Supreme Court has treated

that, under Rule 12(b)(1), the district court may weigh the evidence and make factual determinations, if necessary, to determine whether it has jurisdiction to hear the case." Massachusetts Delivery Ass'n, 671 F.3d at 40 n.6.  Here, the Court does not (and needs not) weigh the evidence to decide whether it ought abstain its jurisdiction.  It makes its decision in consideration of undisputed facts, namely the complaint and publicly available documents (including documents and dockets from the state court proceedings).  See id.  Thus, the Court does not resolve the issue of whether to apply Rule 12(b)(6) or Rule 12(b)(1) in evaluating abstention arguments. See id. (deciding it need not decide which standard to apply because the court made its abstention decisions based on "undisputed" facts); Action Network v. Maine, 679 F. Supp. 2d 140, 144 & n.2 (D. Me. 2010) (recognizing that the First Circuit has not clearly stated "any pleading or burden requirements" in the context of abstention and choosing not to apply either Rule 12(b)(1) or Rule 12(b)(6) because the question is "academic" and the parties do not dispute "the existence of content of the pertinent documents").[7]

---

Younger as jurisdictional in Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 100 n.3 (1998)).

[7] This Session, in a short order, once held that because Younger abstention applies, "dismissal of this action for lack of jurisdiction is appropriate."  Lane v. Brigham & Women's Hosp., No. CV 22-10810-WGY, 2022 WL 2374728, at *1 (D. Mass.

**B.    Subject Matter Jurisdiction**

This Court has diversity jurisdiction pursuant to 28 U.S.C.

§ 1332.  See Guillemard-Ginorio v. Contreras-Gomez, 585 F.3d

508, 517 (1st Cir. 2009) (explaining how abstention doctrines

"call upon federal courts to decline to exercise their properly

held jurisdiction").  AUI has its principal place of business in

Texas, SEP has its principal place of business in Massachusetts,

and FK has its principal place of business in Florida.  Compl.

¶¶ 3-5.  Thus, there is complete diversity.  There is no dispute

that the amount in controversy exceeds $75,000.  See id. ¶ 6;

FK's Mem. (not disputing the amount in controversy).

**C.    Abstention**

The Defendants asked this Court to abstain from exercising

its federal jurisdiction under several abstention doctrines:

---

June 21, 2022), aff'd, No. 22-1503, 2022 WL 18144099, at *1 (1st
Cir. Oct. 4, 2022).  This Court did not explain whether Rule
12(b)(6) or Rule 12(b)(1) was the appropriate standard for
review, instead simply stating that the case was dismissed under
Younger for lack of jurisdiction.  Id.  In another case, this
Session granted a motion to dismiss based on abstention and the
parties invoked Rule 12(b)(6); there, the Court did not specify
which standard it was applying and simply stated that it was
granting the motion to dismiss.  Michael Haynes & Assocs., LLC
v. Sec. Credit Servs., LLC, No. CV 20-10389-WGY, 2020 WL
13579432, at *1, 3 (D. Mass. Apr. 8, 2020).  Having waffled over
this issue, I presently consider the issue an open question, as
(1) the First Circuit has kept it open despite opportunities to
clarify, and (2) its resolution is not necessary for the present
analysis.

Princess Lida abstention, Colorado River abstention, Younger abstention, and Brillhart-Wilton abstention.[8]

Courts have a "virtually unflagging obligation"[9] to exercise federal jurisdiction. Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976); see also Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 716 (1996) ("We have often acknowledged that federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress."). The Supreme Court consistently emphasizes that abstention is the exception, not the rule. See, e.g., Sprint Commc'ns, Inc. v. Jacobs, 571 U.S. 69, 81-82 (2013) (citing Hawaii Housing Authority v. Midkiff, 467 U.S. 229, 236 (1984) (quoting Colorado River, 424 U.S. at 813)). "Nevertheless, this obligation [to exercise federal jurisdiction] is not absolute—and the Supreme Court has developed a small cluster of doctrines that either require or allow federal courts to defer to state proceedings in

---

[8] With respect to the variety of abstention doctrines available to federal litigants, the First Circuit has recognized that "these doctrines 'are not rigid pigeonholes into which federal courts must try to fit cases.' . . . [but that] 'the categories do matter.'" See Rossi v. Gemma, 489 F.3d 26, 34 (1st Cir. 2007).

[9] This unflagging duty does not exist for claims brought under the Brillhart-Wilton abstention doctrine, discussed infra Section II.E, as courts have more discretion in deciding whether to retain those claims. Atlas Copco Const. Tools, Inc. v. Allied Const. Prod., LLC, 307 F. Supp. 2d 228, 232 (D. Mass. 2004) (Ponsor, J.) (citing El Dia, Inc. v. Hernandez Colon, 963 F.2d 488, 493 (1st Cir. 1992)).

particular circumstances." Sirva Relocation, LLC v. Richie, 794
F.3d 185, 191 (1st Cir. 2015) (citing Quackenbush, 517 U.S. at
716–18).

Courts are sometimes confronted with applying abstention
doctrines to different claims of relief. See, e.g.,
Massachusetts Biologic Lab'ys of the Univ. of Massachusetts v.
MedImmune, LLC, 871 F. Supp. 2d 29 (D. Mass. 2012) (Gorton, J.).
There is "coercive" relief and declaratory relief. Id. at 33.
"Coercive" relief includes relief for damages or an injunction,
whereas declaratory relief, as the name suggests, is relief
requested under the Declaratory Judgment Act. Id. Some courts
segregate the plaintiff's claims and apply abstention doctrines
to each individual claim based on the type of relief requested
(the "surgical approach"). In Massachusetts Biologic Lab'ys,
this Court applied a surgical approach when the federal
plaintiff requested both coercive and declaratory relief by
applying Colorado River to the plaintiff's coercive contract
claims and the Brillhart-Wilton standard for the declaratory
judgment claim. Id. at 35. In deciding whether to apply the
surgical approach, the Court did note that while the First
Circuit in Rossi did apply the surgical approach, the First
Circuit did not -- unlike many of its sister circuits -- state
whether it was endorsing the surgical approach over other
approaches. Id. at 33-36 (interpreting Rossi as allowing the

[16]

so-called surgical approach but not requiring it); see also Rossi v. Gemma, 489 F.3d 26, 39 (1st Cir. 2007) (applying Brillhart-Wilton to the declaratory claims, not Colorado River, and indicating that Colorado River is the proper test for the state law damages claims).

Another approach, used by several circuit courts (and what this Court is referring to as the "non-surgical" approach), includes applying Colorado River to both declaratory and coercive claims. Massachusetts Biologic Lab'ys, 871 F. Supp. 2d at 33-34. The Massachusetts Biologic Lab'ys Court observed that it ultimately did not matter, practically, whether a court applied the surgical or non-surgical approach, because they almost always render the same result.[10]

Although FK's arguments have focused on exercising abstention for the declaratory judgment claim about liens (Count

---

[10] The Massachusetts Biologic Lab'ys Court stated:

While [the surgical approach] appears to be unique, [this] approach will nearly always yield the same result as [the approach applying Colorado River to both the coercive and declaratory claims] because when a plaintiff seeks relief in addition to a declaratory judgment, such as damages or injunctive relief, both of which a court must address, "the entire benefit derived from exercising discretion not to grant declaratory relief is frustrated, and a stay would not save any judicial resources."

Massachusetts Biologic Lab'ys, 871 F. Supp. 2d at 34 (citing Chase Brexton Health Servs., Inc. v. Maryland, 411 F.3d 457, 466 (4th Cir. 2005)).

II), FK argues that the entire complaint ought be dismissed.
FK's Reply 1-2 (asking this Court to "abstain from these
proceedings" but more specifically mentioning that the requested
declarations interfere with the state proceedings); FK's Mot. 1
(arguing that "[t]he Complaint must be dismissed . . . as the
relief AUI seeks directly affects numerous in rem state court
actions relating to parcels of real property encumbered by
state-authorized mechanic's liens in Massachusetts and Maine
state court claims."). SEP pointed out that AUI's 93A claim
(Count IV) also pertains to the validity of the liens. SEP's
Mot. 1. Accordingly, this Court presumes that the Defendants
are moving to dismiss all of AUI's claims under abstention
doctrines.

In accordance with Rossi, this Court applies Colorado River
to AUI's coercive claims: specifically, the claims pertaining to
chapter 93A, breach of contract, misrepresentation, and joint
venture/instrumentality. See infra Section II.D. The Court
then analyzes the declaratory judgment claims under the
Brillhart-Wilton doctrine in accordance with the surgical
approach. See infra Section II.E. Lastly, the Court addresses
the Defendants' Younger abstention arguments. See infra Section
II.F.

**D.  This Court Rejected Defendants' Arguments for Abstention Under <u>Princess Lida</u> and <u>Colorado River</u>.**

This Court did not abstain under <u>Princess Lida</u> or <u>Colorado River</u>, because (1) there is no parallel action; and (2) there are not extraordinary circumstances warranting abstention.

As discussed <u>infra</u>, the Defendants' abstention arguments, while not directly discussing <u>Colorado River</u>, implicate that abstention approach due to the First Circuit's treatment of <u>Princess Lida</u> abstention.  Thus, while neither party fully briefed <u>Colorado River</u>,[11] this Court nevertheless conducts a full <u>Colorado River</u> analysis, using the information available to it at the time of this Court's ruling in January 2024.

---

[11] While FK argued for dismissal under <u>Princess Lida</u> abstention, it did not address <u>Colorado River</u> abstention specifically.  FK's Mem.  SEP raised <u>Colorado River</u> abstention as an affirmative defense, summarily adopted FK's <u>Princess Lida</u> arguments, but did not mention or elaborate upon its <u>Colorado River</u> arguments in its motion to dismiss.  SEP's Answer 9; SEP's Mot. 1.  AUI briefed <u>Princess Lida</u> and <u>Colorado River</u> generally but did not apply the <u>Colorado River</u> factors to the facts of the case, arguing that doing so is "impossible" because FK failed to identify a "parallel suit" warranting abstention.  Opp'n 7-12 & n.8.  In its reply, FK later challenged AUI's claim that there are no parallel suits and attached AUI's third party complaint in the Middlesex State Action as evidence of a parallel suit.  FK's Reply.  FK also pointed out that AUI referenced, in its complaint, several lien actions brought by FK and SEP in state courts.  <u>Id.</u> at 4.

###### 1. This Court Followed the First Circuit's Guidance in Treating <u>Princess Lida</u> Abstention as One of Several <u>Colorado River</u> Factors.

This Court rules that <u>Princess Lida</u> abstention is not compulsory but instead is treated as one of several factors considered under this Court's <u>Colorado River</u> analysis.

FK argued that, under <u>Princess Lida</u>, this Court "is without jurisdiction to adjdudicate [sic] in rem or quasi in rem claims subject to preexisting state court actions."  FK's Mem. 5.  AUI argued that <u>Princess Lida</u> abstention is not mandatory under First Circuit jurisprudence and is thus not a "standalone basis to abstain."  Opp'n 10-11.

In <u>Princess Lida</u>, the Supreme Court held that "if the two suits are in rem . . . [such that] the court, or its officer, has possession or must have control of the property which is the subject of the litigation in order to proceed with the cause and grant the relief sought[,] the jurisdiction of the one court must yield to that of the other."  <u>Princess Lida of Thurn & Taxis</u> v. <u>Thompson</u>, 305 U.S. 456, 466 (1939).

The First Circuit, unlike its sister circuits,[12] has analyzed <u>Princess Lida</u> as a part of its discretionary <u>Colorado</u>

---

[12] AUI recognized that although most courts consider <u>Princess Lida</u> abstention mandatory, the First Circuit is the exception.  Opp 11 n.7; <u>Selton</u> v. <u>U.S. Bank Tr. Nat. Assn.</u>, 124 F. Supp. 3d 1245, 1249-50 (M.D. Fla. 2015) (explaining that although several circuits view <u>Princess Lida</u> abstention as

<u>River</u> abstention analysis.  <u>See, e.g.</u>, <u>United States</u> v. <u>Fairway</u>
<u>Cap. Corp.</u>, 483 F.3d 34, 40 n.2 (1st Cir. 2007); <u>see also</u> <u>Selton</u>
v. <u>U.S. Bank Tr. Nat. Assn.</u>, 124 F. Supp. 3d 1245 (M.D. Fla.
2015) (recognizing that <u>Colorado River</u> and <u>Princess Lida</u>
abstention are "permissive" under the First Circuit
jurisprudence).  Specifically, <u>Princess Lida</u> has been analyzed
under the first <u>Colorado River</u> "exceptional circumstances"
factor, which assesses "whether either court has assumed
jurisdiction over a res."  <u>Fairway Cap. Corp.</u>, 483 F.3d at 40
n.2 ("treat[ing] the issue of a state court's in rem or quasi in
rem jurisdiction as the first factor to be considered in
the <u>Colorado River</u> abstention analysis, and [thus determining]
it is unnecessary to address abstention under <u>Princess Lida</u>
separately"); <u>see id.</u> at 41 (stating that although the state
court did exercise quasi in rem jurisdiction, this "does not
make abstention mandatory" under First Circuit precedent).  FK
does not specifically address the First Circuit's treatment of
<u>Princess Lida</u>.

     Thus, in accordance with the First Circuit's treatment of
<u>Princess Lida</u> abstention, this Court proceeds to analyze these
arguments under the <u>Colorado River</u> abstention doctrine, <u>see</u>
<u>infra</u> Section II.D.2.a.

---

mandatory "the First Circuit [instead] treats <u>Princess Lida</u> as a
factor in the <u>Colorado River</u> permissive abstention analysis").

    **2.**    **This Court Held That There Is No Parallel Action, Nor Are There Extraordinary Circumstances Warranting Abstention; Thus, This Court Retained Jurisdiction of the Coercive Claims Under <u>Colorado River</u> (and <u>Princess Lida</u>) Abstention.**

This Court retained its jurisdiction under <u>Colorado River</u>.

In order to apply <u>Colorado River</u> abstention, a court must assess, as a "threshold inquiry", whether there is parallel litigation in both state and federal court.  <u>OHI Asset (CT) Lender, LLC</u> v. <u>Woodland Manor Improvement Ass'n ex rel. Shine</u>, 687 F. Supp. 2d 12, 17-18 (D.R.I. 2010).  It is well established, however, that parallel litigation alone is not enough to warrant <u>Colorado River</u> abstention.  <u>Jiménez v. Rodriguez-Pagan</u>, 597 F.3d 18, 27 (1st Cir. 2010).  Recognizing the strong presumption in favor of exercising federal jurisdiction, courts must not abstain under <u>Colorado River</u> unless exceptional circumstances exist warranting abstention.  <u>Id.</u> at 27-28 (stating that only the "clearest of justifications" warrant dismissal).

Considering the strong presumption against abstention, the lack of sufficient parallels between this action and the state action(s), and the foregoing weighing of the <u>Colorado River</u> "extraordinary circumstances" factors, this Court **RETAINED** jurisdiction over these claims.

a. __Colorado River__ **Abstention Is Not Warranted Because the State and Federal Proceedings Are Not Parallel.**

There is no parallel state court action because the present federal action has a greater scope than the individual state court actions; thus, the resolution of one of these state court proceedings would not resolve all of the federal claims.

FK argued that "there are multiple pending state court actions seeking to enforce and foreclose mechanic's liens in various jurisdictions across Massachusetts and Maine." FK's Mem. 5. AUI asserted that FK failed to identify any parallel state litigation specifically; in other words, FK failed to show how "substantially the same parties" are litigating "substantially the same issues" and there is a "substantial likelihood that the state litigation would dispose of all claims presented in the federal case." Opp'n 9.

In response, FK pointed to the five lien enforcement actions, filed by FK against AUI and referenced in AUI's complaint, stating that "there had been no reason to specify other parallel litigation . . . because AUI had admitted to the existence of the operative litigation." FK's Reply 1-2. FK also pointed out, in its reply, that AUI's third party complaint ("Third Party Complaint") filed in one of the lien enforcement actions ("Middlesex State Action") is "nearly identical to the complaint filed in this matter." Id. at 4.

"A state proceeding is considered parallel to its federal counterpart . . . where 'substantially the same parties are contemporaneously litigating substantially the same issues' and there is a 'substantial likelihood that the state litigation will dispose of all claims presented in the federal case.'" Massachusetts Biologic Lab'ys, 871 F. Supp. 2d at 36; Adams v. West Bend Mut. Ins. Co., No. 92 C 20359, 1993 WL 114558, at *2 (N.D. Ill. Apr. 5, 1993) (explaining that the parallel proceeding test focuses on whether the state proceeding can "dispose of all claims presented in the federal case").

"[S]tate and federal claims arising out of the same factual circumstances do not qualify as parallel if they differ in scope or involve different remedies." vonRosenberg v. Lawrence, 849 F.3d 163, 168 (4th Cir. 2017)(cautioning against abstention if there exists "any serious doubt that the state action would resolve all of the claims"); Fru-Con Const. Corp. v. Controlled Air, Inc., 574 F.3d 527, 535 (8th Cir. 2009) (holding that "[w]hile both [contract and lien] actions stem from the same project and contractual relationship, each is premised on a different wrong arising from different occurrences," and thus reversing a district court's decision in favor of abstention).

i.   **Lien Enforcement Actions Filed by FK**

With respect to the lien enforcement actions filed by FK, see supra Section I.B.5 (listing the lien enforcements

[24]

specifically brought by the Defendants), AUI stated that SEP is
not a party to the lien enforcement actions brought by FK
(whereas all of the parties are involved in this federal
litigation), and those lien enforcement actions do not include
contract claims.  Opp'n 9.  In these cases, FK sued AUI as an
assignee for SEP's workers and is only seeking monies for labor
(not materials) for that particular project under "general
equitable theories and a statutory bond claim."  Id.; see supra
Section I.B.5.  The relief sought by AUI appears to be broader
than the relief at issue in FK's enforcement liens: here, AUI is
seeking relief as to whether it owes money and whether SEP/FK
breached their agreement, as per the Master Subcontract and work
orders.  See Compl. 39-48.

Thus, although the state lien enforcement claim arises from
the same set of facts, these litigations are not "parallel"
because the federal action involves different claims and has a
potentially broader scope of relief: the present case involves
claims that go beyond the individual Project at issue in each
individual lien enforcement action.

### ii.  Middlesex State Action

The Middlesex State Action -- submitted by FK as a
"parallel action" -- involves plaintiff Consolidated Electrical
Distributors, Inc. ("CED") suing defendants SEP, AUI, and two
other defendants "to enforce a mechanic's lien and to recover

damages on a contract relating to the sale of electrical materials for solar panels" for a construction project in Woburn ("Woburn Project").  See Compl., Consolidated Elec. Distrib., Inc. v. State Energy Partners, LLC et al., No. 2381-CV-02022 (Middlesex Sup. Ct. July 13, 2023).  CED brought contract and quantum merit claims against SEP, and a bond claim against AUI. Id. ¶¶ 30-42.

In the Middlesex State Action, AUI brought a Third-Party Complaint against FK, seeking a declaration that "FK has no standing to assert a lien on the Project," and that "FK's lien is invalid," because AUI does not owe money, as well as claims for misrepresentation and joint venture/instrumentality.  Third-Party Complaint ¶¶ 32-44.  This complaint is similar to AUI's complaint in the current action.  See generally Compl.[13]

While there are overlaps between the types of claims in the present action and the Middlesex State Court Action, AUI asks this Court for broader relief.  In the Middlesex State Action, AUI seeks a declaration that "FK has no standing to assert a lien on the Project," only mentions five liens, and does not reference other state court litigations.  Third Party Complaint

---

[13] The only difference, in terms of the kind of claims (not scope) brought against the Defendants in the Middlesex State Action compared to this present federal action, is that the federal complaint has a chapter 93A claim, whereas this Third-Party Complaint does not.

¶¶ 26-27, 34 (discussing five liens -- the Defendants' liens and liens from other actors -- and not mentioning other state court litigations); see id. ¶ 1 (defining "Project" to include only the Woburn job site). But see id. 10 (requesting in its prayer for relief that this Court declare "FK has no standing to assert a lien on any Project") (emphasis added).

The present action, however, asks for a declaration on FK's standing to assert liens on any project and whether the liens are invalid/inflated, discussing other liens not mentioned in the Third-Party Complaint. Compl. ¶¶ 31, 35, 38, 44 (mentioning more projects than the Woburn Project, referencing liens on other projects, discussing six lawsuits filed by the Defendants, and requesting a declaration that "FK has no standing to assert a lien on any Project"); see id. ¶ 61 (alleging inflated liens as a chapter 93A violation).

Similarly, in the same Middlesex State Action, AUI filed a cross claim against SEP for a declaration of rights,[14] breach of

---

[14] AUI requested a judicial determination of the following: SEP failed to perform under the Work Order, SEP breached the Work Order, there is no amount due to SEP under the work order, the transfer of any rights under the Work Order is void and ineffective, SEP is required to indemnify and hold AUI harmless from any liens on the project, AUI had the right to withhold payments, and SEP's lien was intentionally inflated and filed in bad faith. See Answer, Affirmative Defenses and Cross-Claim 13, Consolidated Elec. Distrib., Inc. v. State Energy Partners, LLC et al., No. 2381-CV-2022 (Middlesex Sup. Ct. October 6, 2023) ("Cross Claim").

contract, and joint venture/instrumentality.  See Answer,
Affirmative Defenses and Cross-Claim, Consolidated Elec.
Distrib., Inc. v. State Energy Partners, LLC et al., No. 2381-
CV-02022 (Middlesex Sup. Ct. October 6, 2023) ("Cross Claim").[15]
Here too, the only difference between AUI's claims against SEP
in the present action and the Middlesex State Court Action is
that the latter's allegations are tailored specifically to the
Woburn Project.  Compare, id. 6, 11-13 (referring to some
determinations specific to the Woburn Project and referencing
five liens), with Compl. ¶ 41 (asking for a declaration with
respect to multiple liens and projects), and id. ¶ 31
(referencing liens and projects outside of the Woburn Project).

Despite arising from similar factual circumstances, the
scope of each action differs enough to provide "serious doubt
that the state action would resolve all of the claims."  See
vonRosenberg, 849 F.3d at 168; see also Shields v. Murdoch, 891
F. Supp. 2d 567, 577-78 (S.D.N.Y. 2012) (stating that any doubt
regarding whether a parallel action exists ought be resolved in
favor of exercising federal jurisdiction).

Thus, this Court rules that the Defendants did not
sufficiently identify a parallel action and thus the threshold

_____

[15] Neither party submitted evidence of this cross claim to
the Court -- it was found on the public court docket for the
Middlesex State Action.

requirement for a <u>Colorado River</u> abstention fails.  Even if
there were a parallel action, this Court rules that <u>Colorado
River</u> abstention is still not appropriate, as discussed <u>infra</u>,
because this case does not present extraordinary enough
circumstances to overcome the strong presumption in favor of
this Court's exercise of federal jurisdiction.

> b.  **<u>Colorado River</u> Factors & Presumption Against
> Abstention**

Even were the actions parallel, this Court nevertheless
deems <u>Colorado River</u> inappropriate because there exist no
exceptional circumstances warranting abstention.

Courts with jurisdiction over an action have a "virtually
unflagging obligation" to exercise this jurisdiction, even if
there is a pending state action concerning the same matter.
<u>Colorado River</u>, 424 U.S. at 817.  Courts have emphasized that
<u>Colorado River</u> abstention is only appropriate "in certain
'exceptional' circumstances."  <u>Id.</u>; <u>see also</u> <u>Villa Marina Yacht
Sales, Inc.</u> v. <u>Hatteras Yachts</u>, 947 F.2d 529, 532 (1st Cir.
1991).  "Abstention from the exercise of federal jurisdiction is
the exception, not the rule."  <u>Colorado River</u>, 424 U.S. at 813.
The circumstances warranting abstention must implicate
"considerations of '[w]ise judicial administration, giving
regard to conservation of judicial resources and comprehensive

disposition of litigation.'"   Id. at 817 (citing Kerotest Mfg.
Co. v. C-O-Two Fire Equip. Co., 342 U.S. 180, 183 (1952)).

There is thus a "strong presumption" in favor of a federal
court exercising federal jurisdiction.  Gonzalez v. Cruz, 926
F.2d 1, 3 (1st Cir. 1991) (citing Moses H. Cone Mem'l Hosp. v.
Mercury Constr. Corp., 460 U.S. 1, 16 (1983)).  Colorado River
abstention ought "be approached with the most caution, with
'[o]nly the clearest of justifications' warranting dismissal."
Jiménez, 597 F.3d at 27; see also Massachusetts Biologic Lab'ys,
871 F. Supp. 2d at 33 ("[T]he 'crevice' in federal jurisdiction
carved out by [Colorado River] is a narrow one," and must be
exercised "sparingly and approached with great caution[.]")
(quoting Jiménez, 597 F.3d at 27; Nazario-Lugo v. Caribevision
Holdings, Inc., 670 F.3d 109, 115 (1st Cir. 2012)).  Courts
balance the following non-dispositive factors in assessing
Colorado River abstention:

> (1) whether either court has assumed jurisdiction over
> a res; (2) the [geographical] inconvenience of the
> federal forum; (3) the desirability of avoiding
> piecemeal litigation; (4) the order in which the
> forums obtained jurisdiction; (5) whether state or
> federal law controls; (6) the adequacy of the state
> forum to protect the parties' interests; (7) the
> vexatious or contrived nature of the federal claim;
> and (8) respect for the principles underlying removal
> jurisdiction.

Jiménez, 597 F.3d at 27-28 (quoting Rio Grande Cmty. Health Ctr.
v. Rullan, 397 F.3d 56, 71-72 (1st Cir. 2005)); see Moses H.

Cone, 460 U.S. at 16 (explaining that assessment of the Colorado
River factors is not a "mechanical checklist" but instead
warrants a "balancing of the important factors," with the
"balance heavily weighted in favor of the exercise of
jurisdiction").

Upon analyzing each of the Colorado River factors as they
relate to the Middlesex State Action,[16] detailed infra, and
recognizing the strong presumption in favor of exercising
jurisdiction, this Court ruled that the circumstances do not
warrant Colorado River (and similarly Princess Lida) abstention
in the present case.

i. **Jurisdiction over the Res (& Princess
Lida)**

This factor weighs in favor of abstention for AUI's claims
involving liens, although not heavily.

---

[16] The Court primarily used the Middlesex State Action for
its Colorado River analysis because it is specifically
identified by FK as having allegations "almost identical" to the
current federal case, and it is the only state litigation where
FK has submitted additional information (i.e., a state
complaint).  Moreover, SEP similarly referred to this action
when invoking its Colorado River affirmative defense in its
Answer.  SEP's Answer 9, ECF No. 11.  The Court does, however,
note when it observed differences or similarities from this
analysis when considering publicly available information from
the state court actions filed specifically by the Defendants (as
they are arguably the other state court litigations argued as
"parallel" by FK).  See supra Section I.B.5 (listing the liens
filed by the Defendants); infra Section II.D.2.b.viii (including
additional analysis as to the state actions filed by the
Defendants); see infra Section II.D.2.b.iv (same).

[31]

The first Colorado River factor is "whether either court
has assumed jurisdiction over a res." Jiménez, 597 F.3d at 27.
As discussed, the Defendants' Princess Lida arguments are
relevant to this first Colorado River abstention factor. See
supra Section II.D.1.  FK asserted that "there are multiple
pending state court actions seeking to enforce and foreclose
mechanic's liens in various jurisdictions across Massachusetts
and Maine" and that because certain state courts have
"jurisdiction over a res," this Court is "without jurisdiction"
"over these claims seeking to affect rights to that same res."
FK's Mem. 5-6.  FK states that AUI is requesting that this Court
"interfere with FK's real estate mechanic's lien claims," which
are "subject to exclusive prior state court jurisdiction." Id.
at 5.

Although AUI's declaratory judgment lien claim more
directly involves the mechanic's liens filed in Massachusetts
and Maine state courts, see infra note 20 (detailing the
declaratory claims), some of AUI's coercive claims here also
involve these mechanic's liens, especially the chapter 93A
claim, see infra note 23(discussing to what extent the coercive
claims overlap with the declaratory claims).  These coercive
claims also relate to the parties' obligations under the Master
Subcontract and work orders -- i.e., whether AUI owes SEP money
(and if so, how much) relates to whether the liens were

inflated/invalid (also at issue in the chapter 93A claim), and whether FK was a valid assignee of SEP's rights and obligations under the Master Subcontract relates to whether it had standing to assert a lien.

As a threshold matter, the Court first addresses whether the mechanic's liens involved here are considered "in rem" or "in personam". This distinction matters, as this first Colorado River factor concerns jurisdiction over the "res". Courts generally hold mechanic's liens proceedings to be in "rem" because they "involve claims against property, not persons." 53 Am. Jur. 2d Mechanics' Liens § 320. The parties agree that AUI substituted bonds as security for these liens. Opp'n 12; FK's Reply 2. AUI asserts that by substituting "bonds as security for liens[, it] has essentially converted these actions from in rem to in personam." Opp'n 12. In Rossi, however, the First Circuit (although in the context of Younger abstention) did not make a distinction between an enforcement action for a substituted bond and mechanic's lien -- it referred to the proceeding as an "in rem" action even though the lien was bonded off. Rossi, 489 F.3d at 28, 35, 37 (explaining how the proceeding is an in rem action to enforce a mechanic's lien even after plaintiff obtained a lien substitution by paying the state court registry and dissolving the lien); see also United States v. Certified Indus., Inc., 361 F.2d 857, 860-62 (2nd Cir. 1966)

[33]

(determining that a proceeding is still in rem even when a mechanic's lien is substituted out for the bond).  Although state lien enforcement actions are clearly in rem proceedings, and the Court accordingly weighs this factor in favor of abstention, this Court does not weigh this first factor "heavily" in favor of abstention considering this bond substitution.  See Comau, LLC v. Bayview Elec. Co., LLC, No. 20-12865, 2021 WL 1037728, at *8 (E.D. Mich. Mar. 17, 2021) (noting that the first Colorado River factor weighed in favor of abstention, although "not heavily," because the lien was discharged through a "surety bond").

AUI's claims, referencing state mechanic's liens, relate to whether AUI owes FK or SEP money; thus, the resolution of AUI's claims would not interfere with the state's control over the res (meaning control over the state liens) in a way that runs contrary to Princess Lida.  In Princess Lida, "the Supreme Court considered whether a federal district court could properly exercise concurrent jurisdiction over a suit involving the administration and control of a trust res that was already within the exclusive jurisdiction of the [state court]." Bergeron v. Est. of Loeb, 777 F.2d 792, 798 (1st Cir. 1985).  In setting the outer limits of this doctrine, the Princess Lida Court explained that abstention was warranted because "[n]o question is presented in the federal court as to the right of

[34]

any person to participate in the res or as to the quantum of his interest in it.  The contentions are solely as to administration and restoration of corpus." <u>Princess Lida</u>, 305 U.S. at 467. <u>Princess Lida</u> delineated the types of cases that are <u>not</u> subject to <u>Princess Lida</u> abstention: "a case in federal court based upon diversity of citizenship, wherein the plaintiff seeks merely an adjudication of his right of his interest as a basis of a claim against a fund in the possession of a state court." <u>Id.</u> at 466. The Court further elaborated that "an action in the federal court to establish the validity or the amount of a claim constitutes no interference with a state court's possession or control of a res." <u>Id.</u> at 467.  This case would fall into <u>Princess Lida</u>'s exemption and thus the doctrine does not apply. Here, the Court's resolution of AUI's claims does not require the control or administration of the state mechanic's liens (or now bonds); instead, such a resolution would simply assess the parties' contractual rights in relation to those liens/bonds.

Although conducting a <u>Younger</u> analysis, the First Circuit in <u>Rossi</u> suggested that there are strong reasons to defer to a state court action when the state court has jurisdiction over the res and the federal plaintiff's "constitutional challenge goes to the very authority of the state court to administer the res, and it is not simply a request to adjudicate a claimed entitlement to a portion of the res."  <u>Rossi</u>, 489 F.3d at 37 &

[35]

n.19.  Again, because AUI's claims involving state court liens
(the "res") only concern the parties' rights with respect to the
res and the validity of FK's lien (in terms of amount and
standing to file a lien), Rossi similarly does not warrant
abstention.

        In Amica, plaintiff sought a declaratory judgment in
federal court seeking to expunge a mechanic's lien filed against
it.  Amica Mut. Ins. Co. v. Downs, No. 17-CV-1115-MJR-RJD, 2018
WL 9988607, at *1 (S.D. Ill. Mar. 16, 2018).  The court had
diversity jurisdiction and defendants moved to dismiss under
Princess Lida abstention.  Id.  The court ruled Princess Lida
inapplicable, in part because there was no evidence that the
defendant had an ongoing state litigation regarding the lien
(filing of a lien in a state is different than a proceeding
being instituted in state court, and therefore, the filed lien
did not constitute an ongoing state litigation).  Id. at *2.  As
a further reason, relevant here, the court also ruled the
Princess Lida exemption relevant, because the case was based on
diversity jurisdiction, and "plaintiff seeks a declaratory
adjudication of his rights in relation to the lien filed in the
state of Illinois."  Id.  Although, unlike Amica, here there are
state court litigations regarding the liens, see supra Section
I.B, the present case is similarly based on diversity

jurisdiction, and AUI here seeks determinations of its rights, and Defendants' rights, in relation to the state lien.  See id.

Thus, there is not a strong case for Colorado River abstention, at least solely based on this factor, because the federal case relates to the parties' rights with respect to the mechanic's liens, which are now bonded off, and AUI's claims ultimately center on who-owes-what-and-to-who determinations under the Master Subcontract and work orders.  This first factor would be neutral for those claims not involving the mechanic's liens –- the misrepresentation and joint venture/instrumental claim, see infra note 23 -- because there is no "res" involved in these claims.

### ii.    Inconvenience of the Federal Forum

This factor is neutral.  It is of similar inconvenience for FK and SEP to litigate this suit in this federal forum (in Boston, Massachusetts) as it is for FK (based in Florida) and SEP (based in Massachusetts) to litigate its claims Middlesex County, or other state courts in Massachusetts and Maine.

### iii.    Desirability to Avoid Piecemeal Litigation

This factor weighs against abstention.

The First Circuit has explained that the concern with "piecemeal litigation" does not warrant abstention "simply because related issues otherwise would be decided by different

courts, or even because two courts otherwise would be deciding the same issues." Villa Marina Yacht Sales, Inc. v. Hatteras Yachts, 915 F.2d 7, 16 (1st Cir. 1990).  For example, in Colorado River itself, this factor weighed in favor of abstention because Congress expressed policy concerns about piecemeal litigation with respect the subject at issue.  Id. Here, the only potential concern about piecemeal litigation is routine inefficiency of multiple proceedings, which is not enough to weigh this factor in favor of abstention.  See id.

The Court here even doubts that retaining these claims would result in inefficiencies –- to the contrary, if this Court resolves AUI's claims before the state court proceedings, it may result in less "piecemeal litigation" because AUI is asking for determinations and remedies that affect multiple state court litigations.  See, e.g., Compl. ¶ 44 (AUI asking for this Court to declare that "FK has no standing to assert a lien on any Project") (emphasis added).  It would be more efficient for this Court to resolve legal issues common to or related to these individual state court proceedings.  This is notable, considering "pragmatic concerns" drive Colorado River abstention.  Guzzi v. Thompson, 470 F. Supp. 2d 17, 21 (D. Mass. 2007), vacated and remanded on other grounds, No. 07-1537, 2008 WL 2059321 (1st Cir. May 14, 2008).

Thus, this factor weighs against abstention.

### iv.    The Order in Which the Fora Obtained Jurisdiction

This factor is neutral.[17]

In assessing this factor, courts do not merely look at in which court a complaint was first filed, "but rather in terms of how much progress has been made in the two actions" at the time the <u>Colorado River</u> assessment is done.  <u>Moses H. Cone</u>, 460 U.S. at 21; <u>Elmendorf Grafica, Inc.</u> v. <u>D.S. Am. (E.), Inc.</u>, 48 F.3d 46, 52 (1st Cir. 1995); <u>Guzzi</u>, 470 F. Supp. 2d at 23 (stating this factor favors abstention when the state litigation was filed first and "advanced to a significant degree").  AUI filed this case in early October 2023, <u>see generally</u> Compl., and the Court rendered its abstention decision in January 2024, <u>see</u> Electronic Clerk's Notes, ECF No. 27.

The parties did not submit evidence on the progress of the Middlesex State Action.  This information, however, was publicly available for the Court to review.[18]  As of this Court's hearing

---

[17] The Court notes that, during the motion to dismiss hearing, counsel remarked on how expedited this Court's schedule towards trial was compared to their experience in state court litigations.

[18] The Court notes that, upon its review of the publicly available dockets for the liens filed by FK and SEP, they similarly have not progressed to a significant degree:

- In the lien action filed by SEP against AUI in Plymouth County, SEP's original complaint was filed on 7/31/2023, AUI filed a motion to dismiss on 9/28/2023, the Court denied the motion without prejudice on 11/13/2023 (and invited AUI to re-file its motion to

in January 2024, the Middlesex State Action had not progressed

much -- CED's complaint was filed on July 13, 2023, and AUI

filed its answer, affirmative defenses, cross claims, and third-

---

dismiss), and AUI re-filed its renewed motion to
dismiss on 12/13/2023.  As of the time this Court's
decision in January 2024, the Plymouth court still had
not yet ruled on AUI's renewed motion to dismiss.  <u>See</u>
Docket, <u>State Energy Partners, LLC</u> v. <u>AUI Partners,
LLC et al.</u>, No. 2383-CV-00580 (Plymouth Sup. Ct.).

- In the lien action filed by FK against AUI in Plymouth
County, FK's original complaint was filed on 5/24/2023
and AUI answered the complaint on 1/5/2024.  <u>See</u>
Docket, <u>FK Construction Funding</u> v. <u>AUI Partners LLC et
al.</u>, No. 2383-CV-00418 (Plymouth Sup Ct.).

- In the lien action filed by FK against AUI in
Penobscot County, the case was filed on 5/19/2023 and
a motion for judgment on the pleadings was filed on
7/7/2023.  The decision (if any were made) as to this
motion is not publicly accessible, nor did FK submit
any evidence as to the progress of this docket.  <u>See</u>
Docket, <u>FK Construction Funding</u> v. <u>AUI Partners LLC et
al.</u>, No. PENSC-REA-2023-00019 (Penobscot Sup. Ct.).

- In the lien action filed by FK against AUI in
Penobscot County, the case was filed on 5/19/2023 and
a motion for judgment on the pleadings was filed on
7/7/2023.  The decision (if any were made) as to this
motion is not publicly accessible, nor did the
Defendants submit any additional evidence as to the
progress of this docket.  <u>See</u> Docket, <u>FK Construction
Funding</u> v. <u>AUI Partners LLC et al.</u>, No. PENSC-REA-
2023-00020 (Penobscot Sup. Ct.).

- The Court was unable to review the action filed by FK
against AUI in York County (Docket No. 2023-00044) as
it does not appear that it is publicly available
online, and the Defendants did not submit information
as to this docket's progress.

- The Court was unable to review the action filed by FK
against AUI in Middlesex County (Docket No. 2353-cv-
000330) as it does not appear that it is publicly
available online and the Defendants did not submit
information as to this docket's progress.

party complaint on October 6, 2023.  See Docket, Consolidated

Elec. Distrib., Inc. v. State Energy Partners, LLC et al., No.

2381-CV-02022 (Middlesex Sup. Ct.).  There was also motion to

dismiss briefing filed in late 2023, but it was not heard or

decided by the state court before this Court's motion session in

January 2024.  Id.

Because the present action and the Middlesex State Action

are at comparable stages, this factor is neutral.

> **v.    Whether State or Federal Law Controls**

This factor weighs against abstention, because all of AUI's

claims involve in the present case involve routine "garden

variety" common law claims common to diversity cases.

This factor only weighs in favor of abstention when the

federal claims involve deciding complex or novel issues of state

law.  See Villa Marina Yacht Sales, 947 F.2d at 534 (citing

Villa Marina, 915 F.2d at 15); Pike Co. v. Universal Concrete

Prods., 284 F. Supp. 3d 376, 390-91 (W.D.N.Y. 2018) (observing

that claims related to a breach of contract, unjust enrichment,

and the vacatur of a mechanic's lien are not "particularly novel

or complex" for purposes of Colorado River and thus weighing

this factor against abstention); see also Frydman v.

Verschleiser, 172 F. Supp. 3d 653, 666 (S.D.N.Y. 2016) (weighing

this factor as against abstention when the case involves federal

claims and not complex state law claims, such as breach of

contract claims).  Federal courts are equipped to address
routine issues of state law.  See Gonzalez, 926 F.2d at 5.

Here, there are no federal claims.  The state law claims
raised do not involve complex or novel issues of state law;
thus, this factor weighs against abstention.

### vi.      Whether State Court Can Provide a Remedy

This factor is neutral because "both fora are capable of
determining the parties' rights and obligations."  Massachusetts
Biologic Lab'ys, 871 F. Supp. 2d at 37.

### vii.      Vexatious Nature of the Proceedings

This factor is neutral.  In assessing whether to abstain
under Colorado River, courts consider whether the federal action
was "vexatious or reactive."  Villa Marina Yacht Sales, 947 F.2d
at 532 (explaining that the filing of the federal suit was
vexatious when before plaintiff filed in federal court, the
state court action rejected plaintiff's motion for preliminary
injunction).  There is no indication from the Middlesex State
Action docket that AUI's motivations were "vexatious,"
especially because its Third-Party Complaint was only filed in
early October 2023, and the case had not yet progressed much
since the case was filed.  See Third Party Complaint; see supra
Section II.D.2.b.iv.

This Court acknowledges that AUI technically "reacted", as the term is commonly used, to these state court litigations by filing the present action in order to consolidate the issues involved in the state court cases.  There is no evidence, however, that AUI had an improper motive for doing so.  To the contrary, this Court understands that -- if this Court were promptly to resolve this case (which it intends to) -- this could result in a more efficient resolution of similar claims at issue in the state court litigation.  Cf. Villa Marina Yacht Sales, 947 F.2d at 532 (providing examples of when a litigant is acting "vexatious" or "reactive", such as when the litigant is reacting to an adverse ruling in state court or engaging in abusive litigation).

Thus, because AUI did not "react" to an adverse ruling and had a proper motive in filing the present action, this factor is neutral.

### viii.    Principles Underlying Removal Jurisdiction

This factor is neutral.  "Removal principles" may weigh in favor of abstention when allowing a plaintiff to file in federal court would essentially be allowing the plaintiff to remove a suit plaintiff filed in state court to federal court.  Villa Marina Yacht Sales, 915 F.2d 7 at 14.  This concern is not directly relevant here.  AUI was brought into the case

[43]

originally as a defendant by plaintiff CED and thus did not

initially choose the forum.  See supra Section II.D.2.a.ii.

While the Court notes that AUI did not have to bring its third-

party complaint, see Mass. R. Civ. P. 14, allowing AUI now to

file in federal court still does not clearly violate principles

related to removal, because AUI was originally brought into the

Middlesex litigation by another party.  Further, removal

concerns could not at all be of concern in litigations filed by

FK and SEP in various state courts actions, see supra Section

I.B.5; II.D.2.a.i, because AUI did not at all initiate those

actions in state court.  Thus, this factor is neutral.

### ix. The Balancing of These Factors, Along with the Presumption Against Abstention, Cautions Against Abstention.

With one factor weighing in favor of abstention (and not

heavily), five neutral factors, and two factors weighing against

abstention, and considering the strong presumption in favor of

this Court exercising federal jurisdiction, this Court does not

apply Colorado River abstention.  There is nothing exceptional

about these circumstances warranting this Court's relinquishment

of its jurisdiction.

**E.    This Court Rejected the Defendants' <u>Brillhart-Wilton</u>
Abstention Arguments for the Declaratory Claims
Because Abstaining Under This Doctrine Would Not Make
Disposition of the Case More Efficient.**

This Court applied the <u>Brillhart-Wilton</u> doctrine to AUI's

declaratory claims.  AUI alleged two claims for declaratory

relief: relief relating to the state court liens and relief

related to the Master Subcontract/work orders.[19]

The Defendants raised the applicability of <u>Brillhart-Wilton</u>

to their declaratory claims for the first time at the motion

hearing.  The parties did not submit additional briefing on this

issue.  This Court rejected the Defendants' <u>Brillhart-Wilton</u>

abstention arguments.

Under the <u>Brillhart-Wilton</u> standard, "if the federal

plaintiffs seek declaratory relief, a district court has broad

discretion to stay the federal action as long as the necessary

parties have been joined in the state court proceeding and the

---

[19] AUI alleges, as part of its declaratory judgment claim
(lien) against FK and SEP, that FK has no standing to assert a
lien on any project, that FK/SEP's existing liens are invalid
because AUI owes no money under the work orders, and that FK/SEP
intentionally inflated their liens in bad faith.  Compl. ¶¶ 42-
44; Opp'n 10.  AUI alleges, as a part of its declaratory
judgment claim (contract) against FK and SEP, that SEP failed to
perform under the work order, SEP breached the work order, SEP
is obligated to defend and indemnify AUI from the lien claims,
that there is no amount due to SEP, that any alleged transfer of
rights by SEP was a breach and is thus void and ineffective, AUI
has the right to withhold payments, and finally, that FK and SEP
are jointly responsible for payments and costs to AUI.  Compl. ¶
41.

[45]

claims of all parties in interest can satisfactorily be adjudicated by that tribunal." Massachusetts Biologic Lab'ys, 871 F. Supp. 2d at 33. The doctrine asks whether the claims brought under the Declaratory Judgment Act "can better be settled in the proceeding pending in the state court" when considering "practicality and wise judicial administration." Wilton v. Seven Falls Co., 515 U.S. 277, 282, 288 (1995); Brillhart v. Excess Ins. Co. of America, 316 U.S. 491 (1942). Federal courts have more discretion to dismiss a claim for declaratory judgment under Brillhart-Wilton as compared to Colorado River. Rossi, 489 F.3d at 38-39.

Unlike Colorado River, abstention under Brillhart-Wilton is not precluded even if there is a lack of parallel proceedings.[20] A lack of parallel proceedings does, however, militate

---

[20] In Wilton itself, the court declined to define the "outer boundaries" of courts' discretion to resolve claims for declaratory relief in cases where there are no parallel proceedings. Wilton, 515 U.S. at 290. Several district courts in the First Circuit have interpreted the doctrine as still allowing for abstention even if parallel proceedings are not present. See, e.g., Maxum Indem. Co. v. Thermax, Inc., No. CV 19-10583-NMG, 2020 WL 9743896, at *8 (D. Mass. Jan. 7, 2020) (Bowler, M.J.) (stating that the absence of parallel proceedings does not compel the district court to entertain the declaratory claims); OHI Asset (CT) Lender, LLC, 687 F. Supp. 2d at 23-24 (stating that a determination of no parallel state proceedings does not foreclose Brillhart-Wilton abstention); Arbella Prot. Ins. Co., Inc. v. Regan Heating & Air Conditioning, Inc., No. CV 15-441 S, 2016 WL 3248256, at *2 (D.R.I. June 10, 2016) (stating that a lack of a parallel action does not preclude Brillhart-Wilton abstention).

significantly in favor of retaining jurisdiction.  Kinsale Ins.
Co. v. R. Greenleaf Organics, Inc., No. CV 21-10289-NMG, 2022 WL
657676, at *2 (D. Mass. Mar. 3, 2022) (Gorton, J.) (citing AIG
Prop. Cas. Co. v. Green, 150 F. Supp. 3d 132, 138 (D. Mass.
2015) (Mastroiani, J.)); see also Scottsdale Ins. Co. v. Detco
Indus., Inc., 426 F.3d 994, 998 (8th Cir. 2005) (explaining that
some courts decided that less discretion is warranted under this
doctrine when there is a lack of parallel proceedings).  Here,
this Court decided that parallel proceedings do not exist for
the purposes of Colorado River, since this federal action has a
scope greater (in terms of the claims, liens, and projects it
covers) than do the individual state court actions.  See supra
Section II.D.2.a.  The Court does note here, however, that the
validity of the Defendants' liens would be directly at issue in
the individual lien actions.  Thus, the state court proceedings
will address the validity of the liens, even though there is not
one proceeding deciding the validity for all of the liens.

As for the declaratory judgment contract claim, the Court
observes that, while there is evidence of a declaratory judgment
claim against SEP as to the parties' contract rights for the
Woburn Project, the Defendants did not submit evidence about
whether this declaratory judgment contract claim was brought in
other state actions with respect to the other work orders and
projects encompassed in the present action.  See Cross Claim 11-

[47]

13 (defining "Work Order" as the work order for the Woburn Project and asking for a declaration of rights under the work order); see also Third-Party Complaint ¶¶ 1, 18, 32-34 (similarly tailoring its allegations to the Woburn Project for its the declaratory judgment claim).  Thus, the Court's doubt as to whether there are parallel proceedings militating against abstention under the Brillhart-Wilton standard.

In addition to considering whether the proceedings are parallel, courts generally consider the following Brillhart-Wilton factors in determining whether to abstain under this doctrine:

> (1) the scope of the pending state court proceeding and the nature of defenses open there; (2) whether the claims of all parties in interest can be adjudicated satisfactorily in the state proceeding; (3) whether necessary parties have been joined; (4) whether all necessary parties are amenable to process in the state proceeding; and (5) the virtue of avoiding uneconomical proceedings, vexatious proceedings, and gratuitous interference by a federal court with an orderly and comprehensive suit pending in a state court, presenting the same issues, not governed by federal law, between the same parties.

Flectat Ltd. v. KASL Seabreeze, LLC, 257 F. Supp. 3d 152, 156-57 (D. Mass. 2017) (Kelley, M.J.) (citing Wilton, 515 U.S. at 283). This list is not exhaustive, and no individual factor is dispositive.  Kinsale Ins., 2022 WL 657676, at *3 (citing Wilton, 515 U.S. at 283).  The court in Perelman explained how these factors may be less relevant in cases in which the federal

court has already decided to exercise jurisdiction for the

related coercive claims, as is the case here:

> The factors set out by the Supreme Court in <u>Brillhart</u>
> and <u>Wilton</u> . . . were all formulated in the context of
> cases in which the federal action contained only
> declaratory claims and, therefore, in which a decision
> to stay or dismiss would necessarily terminate the
> federal litigation and leave all claims to be decided
> in state court.  Many of these factors have much less
> relevance in cases like this one, where a coercive
> claim will remain in federal court, whether or not the
> declaratory claims are dismissed or stayed.  For
> example, the question of whether the claims of all
> parties in interest could be resolved in the pending
> state court proceeding has much less pertinence when,
> as a practical matter, at least some of those claims
> will continue to be litigated in federal court.

<u>Perelman</u> v. <u>Perelman</u>, 688 F. Supp. 2d 367, 378 (E.D. Pa. 2010).

The <u>Perelman</u> court went on to explain that, in cases in which

the federal court is retaining jurisdiction over a coercive

claim, "the paramount consideration in deciding whether to

dismiss or stay declaratory claims is whether, as a matter of

'practicality and wise judicial administration,' doing so will

be more efficient and convenient for the court and the

litigants."  <u>Id.</u>

This Court agrees with the <u>Perelman</u> court that, because

here the Court retained the coercive claims, the <u>Brillhart-

Wilton</u> factors[21] may not be as instructive.  Accordingly, the

---

[21] As for the first and second <u>Brillhart-Wilton</u> factors,
although the issues concerning whether the liens are inflated
and FK's standing will be addressed in the state proceeding, and
there would therefore be overlaps between this federal

[49]

Court focuses primarily on the fifth Brillhart-Wilton factor (whether the proceedings are economical and vexatious) and holds that this significantly weighs against abstention.  AUI's declaratory claims are not "uneconomical" or "vexatious."  This Court has determined that AUI has not acted in a vexatious manner in its Colorado River analysis.  See supra Section II.D.2.b.vii.  Moreover, the Court's retention of these claims would not be uneconomical because the non-declaratory claims are intertwined with the facts and issues raised in the declaratory judgment claims.[22]  In Massachusetts Biologic Lab'ys, the Court

———————————————

proceeding and the individual state proceedings, the limited scope of the individual state proceedings cautions the Court against abstention.  For the third factor, although SEP and FK are parties to the Middlesex State Action, AUI noted that SEP is not a party to the lien enforcement actions brought by FK, Opp'n 9; thus, not all necessary parties were joined in the state court actions.  An identity of parties, however, is not required so long as there is "an available procedural vehicle in state court" for a federal plaintiff to resolve the issues raised in the federal court action.  Flectat Ltd., 257 F. Supp. 3d at 157. As for the fourth factor, while AUI has filed this federal case, there is no indication that AUI is not amenable to the state court actions, as AUI is actively participating in these proceedings.

   [22] In its chapter 93A claim, AUI also states that FK and SEP filed false and inflated liens in bad faith.  Compl. ¶ 61. While the contract claims do not relate to the validity of the liens as directly as the chapter 93A claim, the issues of both whether the liens are valid because AUI owes no further payments, or whether FK has standing to bring the liens, are intertwined with SEP's alleged breach of the contract/work orders.  AUI's contract claims focus on whether SEP breached its duties under the contract and involve similar facts that would be at issue in assessing whether the liens were inflated or invalid.  Id. ¶¶ 45-48 (contract claims asking whether SEP

applied <u>Colorado River</u> to the plaintiff's contract claims and
the <u>Brillhart-Wilton</u> standard for the declaratory judgment
claim.  <u>Massachusetts Biologic Lab'ys</u>, 871 F. Supp. 2d at 33,
38.  Because the Court kept the coercive claims in federal
court, the Court, citing <u>Perelman</u>, decided to keep the
declaratory judgment claim because staying the declaratory
judgment "would not make things more efficient or convenient."
<u>Id.</u> at 38.  Here too, it would not be more efficient to stay or
dismiss the declaratory judgment claims because the non-
declaratory claims involve similar issues and facts as those
raised by the declaratory claims.

   For these reasons, this Court rejected the Defendants'
<u>Brillhart-Wilton</u> abstention doctrine arguments.

### F.  This Court Held That <u>Younger</u> Abstention Does Not Apply.

   FK argued that this Court should abstain from making
declarations with respect to the mechanic's liens under <u>Younger</u>
abstention.  <u>See generally</u> FK's Reply.  This Court held that
<u>Younger</u> abstention does not apply, because AUI is not asking
this Court for a determination that affects the state court's
ability to perform its judicial functions or enforce judgments

_____

breached by failing to perform the work, by failing to indemnify
AUI from the liens, and by assigning its rights to FK, among
other claimed breaches).  The misrepresentation claim and
instrumentality/joint venture claims do not at all involve these
liens.  <u>See</u> <u>id.</u> ¶¶ 49-57.

of its courts, and thus this does not fall within the third Younger category.  Adjudicating this case, therefore, would not be an "interference" as defined by the First Circuit.  Thus, Younger abstention does not apply.

## 1.  Legal Framework for Evaluating Younger Abstention in the First Circuit

Younger requires this Court to abstain from exercising its jurisdiction in certain circumstances, invoking principles of equity and comity between federal and state courts.  Sirva Relocation, 794 F.3d at 191.

The First Circuit in Sirva recognized a three-step approach to Younger abstention.  Id. at 192-93.  First, the court must determine that the state proceeding falls into one of Younger's three exceptional categories.  Id.  Second, the court must consider whether the Middlesex factors weigh in favor of abstention.  Id.  Third, and lastly, the court must consider whether any Younger exceptions apply.[23]  Id.

---

[23] The Supreme Court has recognized some exceptions to Younger.  First, abstention is not appropriate if a state proceeding is brought in bad faith (i.e., for the purposes of harassment).  Sirva, 794 F.3d at 192 (citing Younger, 401 U.S. at 53-54).  Second, the federal court need not abstain if the "state forum provides inadequate protection of federal rights." Id. (citing Gibson v. Berryhill, 411 U.S. 564, 575, 578-79 (1973)).  Third, abstention is not appropriate when "a state statute is 'flagrantly and patently violative of express constitutional prohibitions.'"  Id. (quoting Younger, 401 U.S. at 53).  None of the exceptions are applicable here.

As explained by the First Circuit in Sirva, the Supreme
Court in Sprint limited Younger to three exceptional
circumstances: (1) state criminal prosecutions, (2) "civil
proceedings that are akin to criminal prosecutions," (3)
proceedings "that implicate a State's interest in enforcing the
orders and judgments of its courts." Id. at 192; Sprint, 571
U.S. at 72-73.  Absent "exceptional circumstances," federal
courts should exercise their jurisdiction even if there are
state court proceedings concerning the same subject matter.
Sprint, 571 U.S. at 73, 82.  Only the third category is
applicable to this case.[24]

The Supreme Court in Middlesex "added a further gloss" to
Younger (i.e., provided additional factors to consider before
invoking abstention), explaining that a federal court must
abstain under Younger if the federal proceeding would interfere
with an ongoing state judicial proceeding that implicates an
important state interest and provides an adequate opportunity
for the federal plaintiff to advance his federal challenges.
Sirva Relocation, 794 F.3d at 192 (citing Middlesex Cnty. Ethics

---

[24] Here, the first category is not applicable because this
case does not involve a state criminal proceeding.  The second
category is not applicable because this is not a coercive
proceeding "brought by the state as enforcement actions against
an individual."  See Rio Grande Cmty. Health Ctr., Inc. v.
Rullan, 397 F.3d 56, 69 (1st Cir. 2005).

Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982)); see
also Rossi, 489 F.3d at 34-35.

Although some lower courts after Middlesex started applying
the Middlesex factors as a "free-standing test" for determining
whether Younger applies, the First Circuit in Sirva,
interpreting the Supreme Court in Sprint, clarified that
"[g]iving independent life to the Middlesex factors" would
impermissibly expand Younger abstention beyond its limited
"exceptional circumstances" to cover "virtually all parallel
state and federal proceedings." Sirva, 794 F.3d at 192.
Determining that the Middlesex factors are non-dispositive, the
Supreme Court in Sprint explained that "[d]ivorced from their
quasi-criminal context, the three Middlesex conditions would
extend Younger to virtually all parallel state and federal
proceedings, at least where a party could identify a plausibly
important state interest," which is "irreconcilable with our
dominant instruction that . . . abstention . . . is the
'exception, not the rule.'" Sprint, 571 U.S. at 81-82.  Thus,
the Middlesex factors are additional factors in favor of
abstention, but do not alone warrant Younger abstention.[25]  Id.
at 81.

_____

[25] In its reply, FK states the Middlesex factors alone as
the test for whether Younger applies and does not mention the
Younger categories.  FK's Reply 3.  Both the Supreme Court in
Sprint and the First Circuit in Sirva have made it abundantly

Younger abstention only occurs if the federal court's relief would "interfere" with state court proceedings. _Rio Grande Cmty. Health Ctr., Inc._ v. _Rullan_, 397 F.3d 56, 70 (1st Cir. 2005). The First Circuit in _Rio Grande_ explained that, while the "interference" in _Younger_ itself referred to enjoining state criminal proceedings, courts have also expanded what constitutes interference to "where the plaintiff is seeking a declaratory judgment that a prosecution, or the statute serving as its basis, is illegal or unconstitutional." _Id._ The _Rio Grande_ court concluded that interference "usually" occurs when the federal proceeding "either enjoins the state proceeding or has the 'practical effect' of doing so." _Id._ The _Rio Grande_ court clarified, however, that "[n]ormal res judicata effects of federal actions on state actions . . . are of course not enough to trigger _Younger_." _Id._ at 71.[26]

---

clear that the _Middlesex_ factors alone do not warrant _Younger_ abstention.

[26] FK stated that, if this Court were to rule in favor of AUI for its declaratory judgment claims with respect to the mechanic's liens, that would "pos[e] a risk of conflicting federal and state rulings on the validity of these lien claims[.]" FK's Reply 2. FK argued that this is an interference under the First Circuit's decision in _Rio Grande_. FK's reading of _Rio Grande_, however, is overly expansive. A declaration that the state lien is invalid because no money is due or that FK has no standing simply poses res judicata concerns and does not "enjoin" or have the effect of enjoining a state proceeding like a declaration that the state proceeding was unconstitutional would. For these reasons, resolution of the present action's federal claims involving the state mechanic's liens do not constitute an interference.

    **2.   This Court Rejected the Defendants'
Interpretation of the First Circuit's Decision in
<u>Rossi</u> and Was Not Persuaded by the District of
Colorado's Opinion in <u>Saanen</u>.**

In arguing that <u>Younger</u> abstention ought apply, FK focused on the First Circuit's opinion in <u>Rossi</u> and a recent case from the District of Colorado -- <u>Saanen</u> -- interpreting <u>Rossi</u>.  <u>See</u> FK's Reply 4-5.  This Court held that <u>Rossi</u> does not compel this Court to exercise <u>Younger</u> abstention, and it was not persuaded by <u>Saanen</u> to apply <u>Younger</u> abstention.

### a. <u>Rossi</u> v. <u>Gemma</u>

FK heavily relied on <u>Rossi</u> for its argument that <u>Younger</u> abstention is warranted.  <u>See</u> FK's Reply 4-5.  The Court rejected these arguments.

The Rossis were respondents in a state court lien enforcement petitioner brought by Gem (the company owned by Mr. Gemma).  <u>Rossi</u>, 489 F.3d at 27-28.  In the state court action, the Rossis challenged the constitutionality of a state mechanics' lien law under the due process clause (both federal and state) and challenged the validity of the lien under state

law.[27]  Id. at 27-29.  After a complicated procedural history,[28]
the Rossis filed a federal complaint seeking:

> [A] declaration that the [old state lien law was]
> unconstitutional, a declaration that Gem's continued
> use of the [old state lien law] violated the Rossis'
> due process rights, a declaration that [the
> defendant's attorney's signature] rendered
> [defendant's] lien void, an injunction to prevent Gem
> from depriving the Rossis of the funds in the Superior
> Court's registry, an injunction requiring Gem to
> cooperate with the Rossis in obtaining the release of
> their funds, [as well as]. . . damages.

Id. at 31-32.

The Rossi court separated the Rossis' claims into various
categories before applying differing abstention principles.  The
Rossi court divided the analysis into: Younger abstention on the
equitable claims, Younger abstention on the damages claim, and
then separately discussed the Rossis' state law claim for
slander of title and a declaration that Gem's lien was invalid.
Id. at 34-40.

---

[27] The Rossis challenged the validity of the lien on the
grounds that Gem's attorney signed the notice of intention to
perfect the lien, not Gem as (allegedly) required under law.
Rossi, 489 F.3d at 28-29.

[28] The history is as follows.  First, the Massachusetts
Superior Court ruled the Massachusetts lien law
unconstitutional.  Id. at 29-32.  While an appeal was pending
with the Massachusetts Supreme Judicial Court, the Massachusetts
legislature changed the lien law.  Id.  The Rossis then brought
a federal complaint seeking (among other relief) a declaration
that the new lien law was unconstitutional, and that the lien
was void.  Id.  Soon after the Rossis filed their federal
complaint, the Massachusetts Supreme Judicial Court declared the
new lien law constitutional.  Id.

The First Circuit ruled that <u>Younger</u> applied to the Rossis'
requests for a declaration that the state lien law was
unconstitutional and for injunctive relief.[29]  <u>Id.</u> at 37.  That
court recited the <u>Middlesex</u> factors and explained that granting
the requested relief would interfere with the state court
proceeding.  <u>Id.</u> at 34-35.  The court reasoned, as to the
request for injunctive relief, that the Rossis "obtain[ing] the
return of their funds from the court registry . . . will deprive
the Superior Court of its ability to satisfy any claim that [the
defendant] may have against those funds."  <u>Id.</u> at 35.  Moreover,
for the "requested declaratory relief, and [if] it is adjudged
that the [old state lien law] is unconstitutional as applied to
them, they will essentially have obtained a judgment that the
continuation of the state proceeding against them violates their
due process rights," which "is interference for <u>Younger</u>
purposes."  <u>Id.</u> at 35.

Ruling two out of three <u>Middlesex</u> factors easily satisfied,
the <u>Rossi</u> court assessed the third factor: whether an important
state interest is implicated.  <u>Id.</u> at 35.  The <u>Rossi</u> court ruled

---

[29] The Rossis sought a declaration that the old state law
was unconstitutional, a declaration that Gem's continued use of
the state lien law violated the Rossis' due process rights, an
injunction restraining the defendants from further depriving the
Rossis of their money held in the state registry, and an
injunction requiring Gem to cooperate in releasing the Rossis'
funds.  <u>Id.</u> at 30-32, 35.

it was, stating that the Supreme Court has recognized that abstention is appropriate when the federal proceeding interferes with states' "important interests in administering certain aspects of their judicial system." Id. at 35-36 (citing Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 4 (1987)).  In Pennzoil, a federal plaintiff filed a case under 42 U.S.C. § 1983, claiming that the state judicial procedure mandating the posting of a bond for appeal was unconstitutional.  Pennzoil, 481 U.S. at 1, 6-8.  The Rossi court stated that, like Pennzoil, this case "involve[d] challenges to the processes by which the State compels compliance with the judgment of its courts," and thus abstention was appropriate for the section 1983 equitable claims.  Rossi, 489 F.3d at 36-37.[30]

As for the request for a declaration as to the lien's validity, the Rossi court applied the Brillhart-Wilton abstention doctrine.  Id. at 38-39.  Ruling Colorado River inapplicable (not mentioning Younger abstention at all), the Rossi court explained that courts have more discretion in exercising jurisdiction under the Declaratory Judgment Act, and

---

[30] Although Sprint's clarification of the Middlesex factors came after Rossi, Rossi did rule (implicitly) that this case falls within the third Younger abstention category (citing Pennzoil) and thus Rossi was not one of the lower courts (discussed in Sirva, see supra Section II.F.1) that improperly used Middlesex as a freestanding test.  See Rossi, 489 F.3d at 37.

that the district court had correctly abstained from hearing the state law claim (as to the validity of the lien) under the Brillhart-Wilton doctrine.  Id.

On one hand, it can be argued that inherent in Rossi's analysis is a determination that Younger abstention does not apply to declaratory relief on the validity of a state lien. Unlike a declaration that the state law was unconstitutional or an injunction preventing the state court from giving the bond funds to the defendant, the Rossi court (arguably) decided that declaring the validity of a lien does not implicate an interference with the state's judicial process.  On the other hand, the Rossi court did not explicitly say Younger abstention is inapplicable to the declaratory claim as to the lien's validity, but only that -- under a more discretionary abstention standard (Brillhart-Wilton) -- the district court properly dismissed the claim for declaratory relief of the lien's validity.  Thus, Rossi did not need to decide if Younger mandated dismissal because the court could already dismiss the case in its discretion under a much more permissive abstention doctrine.

FK brought to the Court's attention an unreported opinion in the District of Colorado that interprets Rossi in this context.  This case, Saanen v. Silich Construction, recently applied Rossi to circumstances very similar to the case at bar

and held that <u>Younger</u> abstention does apply.  For the reasons
discussed <u>infra</u>, this Court, however, does not adopt <u>Saanen</u>'s
reasoning or disposition, because it does not find it
persuasive.

### b.  Saanen v. Silich Construction

In <u>Saanen</u> v. <u>Silich Construction</u>, Saanen hired Silich to
build a home, the relationship between the parties faltered, and
Silich filed a mechanic's lien on Saanen's home.[31]  2021 WL
4201560, at *1 (D. Colo. Apr. 12, 2021).  Saanen then brought a
suit in federal court, seeking, among other relief, declaratory
relief stating that the mechanic's lien was invalid.  <u>Id.</u>
Silich sought to foreclose the delinquent lien in state court
soon after.  <u>Id.</u>  Silich moved to dismiss the federal case under
<u>Younger</u>.  <u>Id.</u>

The <u>Saanen</u> court identified the <u>Middlesex</u> factors as
"<u>Younger</u>'s prima facie elements" and noted that the parties
agreed these factors were met.[32]  <u>Id.</u>  As discussed <u>supra</u>,

---

[31] <u>Saanen</u> is factually more analogous to the case at bar
than <u>Rossi</u>.  In <u>Saanen</u>, the federal complaint had a breach of
contract claim, misrepresentation claims, as well as a
declaration that the liens were invalid (which similarly appears
related to the breach of contract claim).  First Am. Compl.,
<u>Saanen</u>, 2020 WL 9763206.  In <u>Rossi</u>, the plaintiff argued that
the lien was invalid under state law because the defendant's
attorney signed the notice of intent preceding the lien, instead
of the defendant.  <u>See</u> <u>supra</u> note 27.

[32] Here, the parties have not indicated that these factors
were met.  In fact, as discussed <u>infra</u>, the Court is not

however, these are not prima facie elements of <u>Younger</u>
abstention, but additional factors that could warrant abstention
for a proceeding that already fits in one of <u>Younger</u>'s
exceptional circumstances.  <u>See</u> <u>supra</u> Section II.F.1 (discussion
on how the Supreme Court in <u>Sprint</u> clarified how to apply the
<u>Middlesex</u> factors as discussed by the First Circuit in <u>Sirva</u>).

    Still, the <u>Saanen</u> court did acknowledge <u>Sprint</u>, and
explained that "an effort to stop a state-court from enforcing a
mechanic's lien is precisely the kind of important state-court
judicial proceeding contemplated by <u>Sprint</u> for application of
<u>Younger</u>['s third category]."  <u>Id.</u> at *2.  <u>Saanen</u> cites <u>Pennzoil</u>
as requiring <u>Younger</u> abstention when "the [s]tate's interests in
the proceeding are so important that exercise of the federal
judicial power would disregard the comity between the States and
the National Government."  <u>Id.</u> at *1 (citing <u>Pennzoil</u>, 481 U.S.
at 11).  In support of this argument, the <u>Saanen</u> court cited
<u>Rossi</u>'s holding that <u>Younger</u> abstention applies to a "due-
process challenge to application of state mechanic's-lien
statute" because it involved -- similar to <u>Pennzoil</u> -- a
"challenge to the processes by which the [s]tate compels
compliance with the judgment of its courts."  <u>Id.</u>  In applying

_____

convinced that the <u>Middlesex</u> factors of "interference" and
"state interest" are met in this case, <u>see</u> <u>infra</u> Section
II.F.3.b.

this principle to plaintiff Saanen's request for a non-constitutional declaration of the lien's validity and citing Rossi as direct support, the Saanen court stated: "A federal-court challenge to a state-court proceeding to foreclose a pre-judgment mechanic's lien implicates precisely this kind of important state interest." Id.

The Saanen court does not address why the First Circuit in Rossi did not apply Younger abstention to the declaration of the lien's validity. Moreover, even assuming Saanen's circumstances presented a sufficient state interest or interference to invoke Younger, Sprint's analysis of Middlesex tells us that the importance of the state's interest alone is not enough: there must be a determination, as in Pennzoil, that declaring a lien invalid would "challenge[] . . . the process[] by which the [s]tate compels compliance with the judgments of its courts" or "orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." Pennzoil, 481 U.S. at 13-14; Sprint, 571 U.S. at 73 (quoting New Orleans Pub. Serv., Inc. v. Council of City of New Orleans, 491 U.S. 350, 368 (1989)).

Declaring the state court's procedures unconstitutional certainly challenges states' processes for ensuring compliance with its judgments and has the effect of enjoining the state procedure. In a footnote, the Rossi court explained that the

"constitutional challenge goes to the very authority of the state court to administer the res, and it is not simply a request to adjudicate a claimed entitlement to a portion of the res." Rossi, 489 F.3d at 37 n.19. Declaring a lien invalid because no money is due, however, goes to the Defendants' "claimed entitlement" under the lien and does not as clearly implicate state processes or authority. AUI's request that this Court declare that FK does not have standing to assert a lien does seem to invoke some kind of constitutional challenge, even though this is different from the due process constitutional or procedural challenges typically discussed in the context of Younger; the question of standing, however, poses the same question -- was FK a valid assignee of AUI and SEP's rights under the Master Subcontract. Thus, given the nature of AUI's claims with respect to these liens, a declaration as to the lien's validity or to whether FK can bring a lien generally does not appear to rise to the level of "interference" as defined by Rio Grande -- instead, it seems to implicate normal res judicata effects of federal courts on state courts, which are insufficient to trigger Younger. See supra Section II.F.1.

For these reasons, this Court is not persuaded to adopt the analysis adopted in Saanen.

Looking outside of <u>Rossi</u> and <u>Saanen</u>, the Court further conducts its analysis of whether AUI's claims with respect to the lien fall within <u>Younger</u>'s third exceptional category.

### 3.    This Court Ruled That <u>Younger</u> Does Not Apply to AUI's Claims.

This Court held that <u>Younger</u> abstention did not apply to AUI's claims involving state mechanic's liens.

The Supreme Court has stated that the third <u>Younger</u> category is applicable to state proceedings "involving certain orders . . . uniquely in furtherance of the state courts' ability to perform their judicial functions" or those "that implicate a State's interest in enforcing the orders and judgments of its courts." <u>Sprint</u>, 571 U.S. at 72-73; <u>see, e.g.</u>, <u>Pennzoil</u>, 481 U.S. at 2, 14 (holding that federal courts should not interfere with the constitutionality of bond requirements for appeal of state courts because it affects how state courts enforce their own judgments and challenge "the very process by which those judgments were obtained"); <u>Juidice</u> v. <u>Vail</u>, 430 U.S. 327, 336 n.12 (1977) (holding that federal courts should not declare unconstitutional state provisions authorizing a party to be held in contempt because this process "stands in the aid of the authority of the judicial system, so that its orders or judgments are not rendered nugatory").

The Second Circuit in Cavanaugh recently ruled Younger's third category inapplicable to a federal plaintiff's request for a declaration that the plaintiff did not have a lien on his inheritance after the state probate court already decided that the inheritance was subject to the lien. Cavanaugh v. Geballe, 28 F.4th 428, 429, 431 (2d Cir. 2022). The Second Circuit reasoned that the state court's order recognizing the lien or the defendant Commissioner's "standing to participate in the proceedings neither 'lies at the core of the administration of [the] State's judicial system'. . . , nor implicates a process that aids the state court's core ability to function or force the parties to comply with its order." Id. at 434 (explaining that the state court proceeding "was no more than a run-of-the-mill challenge to a claim for money" and that the "federal suit would not hinder the probate court's basic authority to enforce its orders").

Moreover, the fact that the state court proceedings generally involved a "bond" does not alone warrant application of the third Younger category. In Dignity Health, a state labor commission, upon an employee filing a claim against her employer, ruled for the employee and ordered relief. Dignity Health v. Department of Indus. Rels., Div. of Lab. Standards Enf't, 445 F. Supp. 3d 491, 495 (N.D. Cal. 2020). The employer first asked a federal court to declare that the commission's

[66]

order was preempted, and then -- the next day -- appealed the commissioner's order.  Id.  Even though the employer had to post a bond to appeal the order in the state proceeding, the court determined that the third Younger category did not apply, because the federal plaintiff challenged the merits of the Commissioner's decision, not the appeal bond procedural requirements (which was at issue in Pennzoil).  Id. at 497-98 ("[T]he relevant question is whether the federal plaintiff 'question[s] the process by which [state] courts compel compliance' with state orders.").

Lastly, if a case involves two private litigants, Younger abstention may be even less appropriate.  See AmerisourceBergen Corp. v. Roden, 495 F.3d 1143, 1150 (9th Cir. 2007); see also Rowland v. Novus Fin. Corp., 949 F. Supp. 1447, 1456 (D. Haw. 1996) (recognizing that "a state foreclosure proceeding [is] purely private and hence [does] not implicate important states interests [under Younger]").  The Ninth Circuit in AmerisourceBergen ruled that a state's interest in "enforcing the judgment in [one] particular case," is insufficient to show an important state interest under Middlesex.  AmerisourceBergen, 495 F.3d at 1150.  The Ninth Circuit has "made it clear that '[t]he importance of the [state's] interest is measured by considering its significance broadly, rather than by focusing on the state's interest in the resolution of an individual case.'"

Id. (citations omitted).  Although Pennzoil itself involved
private litigants, the federal plaintiff's request for relief
affected the "state's wholesale interest in preserving its
procedure for posting an appeal bond," as the request challenged
the constitutionality of the bond requirements.  Id. (citing
Pennzoil, 481 U.S. at 12-14; Juidice, 430 U.S. at 327, 330,
335).

This Court ruled that Younger abstention is not appropriate
in this case.

First, and fatally, AUI's claims do not fit into Younger's
third category.  The First Circuit's opinion in Sirva clarified
the proper test for Younger abstention in light of the Supreme
Court's decision in Sprint.  Several cases falling into
Younger's third category involve requests for a federal court to
assess the constitutionality of a state's judicial procedure
(Pennzoil, Juidice).  Even Rossi involved the declaration of the
constitutionality of a state law, along with a requested
injunction to enjoin the State from using its funds to satisfy
defendant's potential recovery.  Here, AUI is asking this court
to determine the validity of a lien based on what is owed under
the Master Subcontract and associated work orders.  Like the
Second Circuit in Cavanaugh, this Court's assessment of whether
the lien is inflated, or whether FK has standing to assert a
lien, does not "lie[] at the core of the administration of the

[68]

state's judicial system" or "implicate a process that aids the state court's core ability to function" -- it does not interfere with the state court's authority, process, or procedures. Moreover, the fact that a bond is involved (like Pennzoil) is immaterial here because no one is challenging the state's bond requirements or process, just the underlying merits of the liens.  Thus, this case does not fit into the third Younger category.

Second, not all of the Middlesex factors are met.  The federal proceeding would not interfere with the state court proceeding, as the First Circuit in Rio Grande has held that normal res judicata concerns do not warrant Younger abstention and this federal proceeding would not practically enjoin the state proceeding -- it is not declaring the state lien law unconstitutional (Rossi), it is not declaring the state court's procedures unconstitutional (like Pennzoil or Juidice), and it is not enjoining the state's use of the bond funds (Rossi). There is also not a sufficient state interest here, because the state interest does not transcend the current case, as the Ninth Circuit recognized in AmerisourceBergen, nor does it implicate the process by which the state court enforces its judgments.

For these reasons, this Court held that Younger abstention does not apply.

## III. CONCLUSION

This Court **REJECTED** the Defendants' abstention arguments under <u>Colorado River</u>, <u>Princess Lida</u>, <u>Brillhart-Wilton</u>, and <u>Younger</u>.  Accordingly, this Court **DENIED** the Defendants' motions to dismiss, ECF No. 13 and ECF No. 16.

/s/ William G. Young

WILLIAM G. YOUNG
JUDGE
of the
UNITED STATES[33]

---

[33] This is how my predecessor, Peleg Sprague (D. Mass. 1841-1865), would sign official documents.  Now that I'm a Senior District Judge I adopt this format in honor of all the judicial colleagues, state and federal, with whom I have had the privilege to serve over the past 46 years.